BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
EREZ REUVENI
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation –
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
Email: katherine.j.shinners@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**(San Diego)**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:23-cv-01367-AGS-BLM |
| *Plaintiffs*, | Hon. Andrew G. Schopler |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| ALEJANDRO N. MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii
INTRODUCTION .....................................................................................................1
BACKGROUND .......................................................................................................2
    A.    The *Al Otro Lado I* Litigation: Metering at Ports of Entry Along The U.S.-Mexico Border ............................................................2
    B.    CBP's Post-Title 42 Guidance for Processing Undocumented Noncitizens at The Ports of Entry .............................................................4
    C.    The Circumvention of Lawful Pathways Rule ............................................5
    D.    Plaintiffs' Complaint and Motion for Preliminary Injunction ...................7
ARGUMENT .............................................................................................................9
    I.    Plaintiffs Are Not Likely to Succeed on the Merits. ..................................9
        A.    Plaintiffs Do Not Identify a Cause of Action for Their Claim. ................................................................................................9
        B.    The November 2021 Memo and Preamble and "Structure" of The Pathways Rule Are Not Judicially Enforceable Under *Accardi*. ...............................................................12
        C.    There Is No Classwide Failure to Follow Agency Policy. ............16
        D.    The *Accardi* Principle Does Not Permit The Injunction Plaintiffs Seek. ....................................................................................19
        E.    The INA Prohibits The Classwide Injunction Plaintiffs Seek. .............................................................................................................21
    II.    Plaintiffs Do Not Establish They Are Likely to Suffer Irreparable Injury. .......................................................................................23
    III.    The Balance of The Equities and The Public Interest Favor The Denial of Preliminary Relief. .............................................................24
CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Al Otro Lado, Inc. v. Mayorkas*,
  619 F. Supp. 3d 1029 (S.D. Cal. 2022) ................................................. 4, 14, 22

*Al Otro Lado, Inc. v. Mayorkas, No.*
  17-cv-2366, 2021 WL 3931890 (S.D. Cal. Sept. 2, 2021) .............................. 3, 4

*Al Otro Lado, Inc. v. McAleenan*,
  394 F. Supp. 3d 1168 (S.D. Cal. 2019) ............................................................ 14

*Al Otro Lado, Inc. v. Nielsen*,
  327 F. Supp. 3d 1284 (S.D. Cal. 2018) .......................................... 14, 16, 17, 18

*Alcaraz v. INS*,
  384 F.3d 1150 (9th Cir. 2004) ................................................................... 11, 15

*Am. Farm Lines v. Black Ball Freight Serv.*,
  397 U.S. 532 (1970) ..................................................................... 13, 14, 16

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ............................................................................. 9

*Biden v. Texas*,
  142 S. Ct. 2528 (2022) .................................................................................... 25

*Bivens v. Six Unknown Agents*,
  403 U.S 388 (1971) ......................................................................................... 10

*Brown v. Haaland, No. 21-cv-344*,
  2023 WL 5004358 (D. Nev. Mar. 6, 2023) ..................................................... 10

*Carnation Co. v. Secretary of Labor*,
  641 F.2d 801 (9th Cir. 1981) ...................................................... 11, 12, 16, 19

*Church of Scientology v. United States*,
  920 F.2d 1481 (9th Cir. 1990) ......................................................................... 15

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................ 9

*Damus v. Nielsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ........................................................... 11, 19

*Dellums v. U.S. Nuclear Regul. Comm'n*,
 863 F.2d 968 (D.C. Cir. 1988) .................................................................................. 21

*Emami v. Nielsen*,
 365 F. Supp. 3d 1009 (N.D. Cal. 2019) ............................................................... 11, 12

*Garland v. Aleman Gonzalez*,
 142 S. Ct. 2057 (2022) .............................................................................................. 22

*Hernandez v. Mesa*,
 140 S. Ct. 735 (2020) ................................................................................................ 24

*Humanitarian Law Project v. Holder*,
 561 U.S. 1 (2010) ...................................................................................................... 25

*Innovation Law Lab*,
 342 F. Supp. 3d 1067 (D. Or. 2018) .......................................................................... 12

*Jane Doe 1 v. Nielsen*,
 357 F. Supp. 3d 972 (N.D. Cal. 2018) ....................................................................... 13

*Jefferson v. Harris*,
 285 F. Supp. 3d 173 (D.D.C. 2018) ..................................................................... 11, 12

*Lopez v. Brewer*,
 680 F.3d 1068 (9th Cir. 2012) ..................................................................................... 9

*Lopez v. FAA*,
 318 F.3d 242 (D.C. Cir. 2003) ................................................................................... 13

*Mada-Luna v. Fitzpatrick*,
 813 F.2d 1006 (9th Cir. 1987) ............................................................................. 13, 14

*Montilla v. INS*,
 926 F.2d 162 (2d Cir. 1991) ...................................................................................... 11

*Morton v. Ruiz*,
 415 U.S. 199 (1974) .................................................................................................. 13

*Nken v. Holder*,
 556 U.S. 418 (2009) .................................................................................................... 9

*Orantes-Hernandez v. Thornburgh*,
 919 F.2d 549 (9th Cir. 1990) ..................................................................................... 25

*Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*,
    746 F.3d 1119 (9th Cir. 2014) .................................................................................. 15

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) .................................................................................... 25

*Presbyterian Church v. United States*,
    870 F.2d 518 (9th Cir. 1989) ...................................................................................... 9

*R.I.L.-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................................... 18

*Salsman v. Access Sys. Americans, Inc.*,
    2011 WL 1344246 (N.D. Cal. Apr. 8, 2011) ........................................................... 10

*Underhill v. Hernandez*,
    168 U.S. 250 (1897) ................................................................................................. 21

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ............................................................................ 1, 10, 11, 16, 20

*United States v. Calderon-Medina*,
    591 F.2d 529 (9th Cir. 1979) ............................................................................... 10-12

*United States v. Cortez*,
    449 U.S. 411 (1981) ................................................................................................. 25

*United States v. Fifty-Three Eclectus Parrots*,
    685 F.2d 1131 (9th Cir. 1982) ............................................................................ 12, 13

*United States v. Texas*,
    143 S. Ct. 1964 (2023) ........................................................................................ 21, 24

*WildEarth Guardians v. Bail, No. 20-cv-440*,
    2021 WL 1550567 (E.D. Wash. Apr. 20, 2021) ...................................................... 24

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................. 9, 23

*Yavari v. Pompeo, No. 19-cv-2524*,
    2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ......................................................... 16

**STATUTES**

5 U.S.C. § 706 ............................................................................................................. 10, 11

6 U.S.C. § 211 .....................................................................................................................2

28 U.S.C. § 1158 .................................................................................. 3, 4, 6, 14, 15

8 U.S.C. § 1225 ........................................................................................ 2, 4, 14, 22, 23

8 U.S.C. § 1252 ............................................................................................... 4, 22, 23

**REGULATIONS**

8 C.F.R. § 100.4 ........................................................................................................ 2

8 C.F.R. § 208.33 ................................................................................................... 6, 7

**FEDERAL REGISTER**

86 Fed. Reg. 42,828 (Aug. 5, 2021) ..................................................................... 4, 5

88 Fed. Reg. 11,704 (Feb. 23, 2023) .................................................................... 5, 6

88 Fed. Reg. 31,314 (May 16, 2023) ........................................... 5-8, 19, 21, 24-26

# INTRODUCTION

This Court should deny the individual Plaintiffs' Motion for a Preliminary Injunction (ECF No. 39).[1] Plaintiffs' Motion concerns U.S. Customs and Border Protection's (CBP) alleged noncompliance with its internal policy for the management and processing of noncitizens without documents sufficient for admission (referred to herein as "undocumented noncitizens") at ports of entry along the U.S.-Mexico border. It seeks a preliminary injunction requiring Defendants to enforce something Plaintiffs call "the Binding Guidance," under the doctrine announced in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Mot. 1. Plaintiffs' requested order would prohibit CBP "from turning back, or directing or encouraging others to turn back, non-citizens arriving or attempting to arrive at a Port of Entry on the U.S.-Mexico border, regardless of whether those arriving non-citizens have an appointment made on the CBP One App." Defs.' Ex.[2] 1 (Pl. Proposed Order).

Plaintiffs cannot succeed on their claims as a factual or legal matter. Critically, Plaintiffs' own evidence rebuts any conclusion that there exists a borderwide policy of the sort they allege. Although CBP prioritizes the processing of undocumented noncitizens with appointments made through the CBP One mobile application (CBP One), CBP's policy remains that those without appointments may not be turned away. The agency has reiterated that directive to its officers. And the data confirms that generally, noncitizens without appointments are not turned away because CBP regularly processes a substantial number of such noncitizens. This is sufficient to rebut the existence of a borderwide policy. Plaintiffs' legal arguments fail, too. They do not identify a cause of action for their *Accardi* claim; they seek compliance with policy documents that are not subject to judicial enforcement; they appear to request

---

[1] Defendants have not yet responded to the Complaint. Defendants preserve, and do not waive, any available arguments, defenses, or positions relating to the Complaint.
[2] "Defs.' Ex." refers to Defendants' Exhibits, attached to the accompanying Declaration of Katherine Shinners.

more than what the policies themselves require; and they seek relief as to ports of entry where no individual Plaintiff was allegedly "turned back." Further, by requesting an order that would compel CBP to discharge obligations under 8 U.S.C. § 1225 to noncitizens in Mexico in a particular manner, Plaintiffs seek relief that is prohibited by the Immigration and Nationality Act (INA).

Plaintiffs have also failed to establish that irreparable injury is likely to occur absent an injunction, particularly given that all individual Plaintiffs have now been processed and CBP is in fact processing undocumented noncitizens who lack appointments. Moreover, to the extent Plaintiffs are seeking an injunction that requires *immediate* inspection and processing of every noncitizen whenever they present at a POE—which goes well beyond what CBP policy requires—such an order would be contrary to the public interest and impossible to comply with. Such on order also would not ultimately benefit the putative class, as it would undermine the efficacy of an appointment system that promotes safe and humane processing and likely decrease the overall number of noncitizens CBP is able to process. Defs.' Ex. 2, ¶¶ 8-12. The Court should deny Plaintiffs' Motion.

## BACKGROUND

**A.    The *Al Otro Lado I* Litigation: Metering at Ports of Entry Along The U.S.-Mexico Border**

CBP's Office of Field Operations (OFO) is responsible for "coordinat[ing] the enforcement activities of [CBP] at United States air, land, and sea ports of entry." 6 U.S.C. § 211(g). These statutory obligations—including but not limited to deterring and preventing entry of terrorists, guarding against illegal entry of individuals, illicit drugs, agricultural pests, and contraband, and facilitating and expediting the flow of legitimate travelers and trade, *id.*—apply at all U.S. ports of entry (POEs), including the 25 Class A land POEs on the U.S.-Mexico border.[3] Those POEs fall

---

[3] "Class A means that the port is a designated Port–of–Entry for all aliens." 8 C.F.R.

under the jurisdictions of the San Diego, Tucson, El Paso, and Laredo Field Offices.

In 2016, a sustained surge of undocumented noncitizens began arriving at southwest border POEs. As part of various efforts to increase the Department of Homeland Security's (DHS) capacity to inspect and process these noncitizens, the POEs began to implement a practice known as metering (or queue management) to manage the flow of these high numbers of noncitizens into POEs to assist in providing a safe and secure environment for all travelers, and to prevent severe strains on border resources and diversion from counterterrorism and other resources. *See generally Al Otro Lado, Inc. v. Mayorkas*, No. 17-cv-2366, 2021 WL 3931890, at *2 (S.D. Cal. Sept. 2, 2021). In April 2018, CBP issued a Metering Guidance memorandum that provided the Directors of Field Operations at the four southwest border Field Offices discretion "to meter the flow of travelers at the land border to take into account the port's processing capacity" "[w]hen necessary or appropriate to facilitate orderly processing and maintain the security of the port and safe and sanitary conditions for the traveling public." *Id.* at *3. Beginning in June 2018, DHS issued further guidance instructing CBP "to prioritize staffing and operations" at the POEs in the following order of priority: national security efforts, counter-narcotics operations, economic security efforts, and trade and travel facilitation, and to use queue management as necessary to protect these priority missions. *Id.* at *3.

Plaintiff Al Otro Lado and individual noncitizens challenged metering and other practices in this Court, claiming that CBP had engaged in what they called "turnbacks" at Class A POEs along the U.S.-Mexico Border. *See* Second Am. Compl., *Al Otro Lado, Inc. v. Mayorkas*, No. 17-cv-2366, ECF No. 189 (Nov. 13, 2018). The plaintiffs in *AOL I* asserted that this conduct was unlawful on several grounds, including that it infringed upon rights and obligations under the INA, at 8 U.S.C. §§ 1158(a) and 1225(a) and (b), as to noncitizens who approach a port of

---

§ 100.4.

entry but do not cross the border into the United States. *See id.* The government, in turn, argued that those statutes did not apply to noncitizens outside the United States.

The *AOL I* Court concluded that "turnbacks" of asylum seekers through metering, prioritization-based queue management, and similar practices that occur without express statutory authority constitute a withholding of CBP's obligation to inspect and refer asylum seekers pursuant to 8 U.S.C. §§ 1225(a)(3) and (b)(1)(A)(ii). *Al Otro Lado*, 2021 WL 3931890, at *18. The court described the "turnbacks" at issue as CBP officers "affirmatively turning asylum seekers away from the border" through a variety of practices. *Id.* at *9. The Court did not define the "turnbacks" to include coordination "with Mexican officials to 'control the flow' of migrants seeking asylum before they reached the border." *Id.*; *see also id.* at *22 n.20. The Court subsequently entered a declaratory judgment, but concluded that classwide injunctive relief was prohibited under 8 U.S.C. § 1252(f)(1), because any such order would enjoin or restrain CBP's efforts to operate 8 U.S.C. § 1225. *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022). The government appealed from that judgment, and the appeal is fully briefed and pending. *See Al Otro Lado, Inc. v. Mayorkas*, No. 22-55988 (9th Cir.)

## B. CBP's Post-Title 42 Guidance for Processing Undocumented Noncitizens at The Ports of Entry

While *AOL I* was pending in the district court, the COVID-19 pandemic altered the processing of undocumented noncitizens. From March 20, 2020, until May 11, 2023, most undocumented noncitizens who sought to enter the United States at its borders were subject to a series of public health orders in effect to combat the pandemic (Title 42 Orders). Under those orders, covered noncitizens were generally stopped at the border or expelled to Mexico or their home countries without processing under the immigration statutes. *See, e.g.*, Public Health Reassessment and Order Suspending the Right to Introduce Certain Persons from Countries Where a Quarantinable Communicable Disease Exists, 86 Fed. Reg. 42,828 (Aug. 5, 2021).

During the same period, in November 2021, CBP issued a memorandum to OFO regarding the management and processing of undocumented noncitizens at POEs along the U.S.-Mexico border. *See* Pl. Ex. 1. The memorandum instructs OFO "to consider and take appropriate measures, as operationally feasible, to increase capacity to process undocumented noncitizens at Southwest Border POEs, including those who may be seeking asylum and other forms of protection." *Id.* "Possible additional measures include the innovative use of existing tools such as the CBP One mobile application, which enables noncitizens seeking to cross through land POEs to securely submit certain biographic and biometric information prior to arrival and thus streamline their processing upon arrival." *Id.* "Importantly, however, asylum seekers or others seeking humanitarian protection cannot be required to submit advance information in order to be processed at a Southwest Border land POE." *Id.* The memorandum permits CBP to staff the border line to manage safe and orderly travel into the POE, but "undocumented noncitizens who are encountered at the border line should be permitted to wait in line, if they choose, and proceed into the POE for processing as operational capacity permits." *Id.* It instructs: "Absent a POE closure, officers also may not instruct travelers that they must return to the POE at a later time or travel to a different POE for processing." *Id.*

C.     **The Circumvention of Lawful Pathways Rule**

In early 2023, the President announced the expiration of the public health emergency on May 11, 2023, which would cause the then-operative Title 42 Order to end. *See* Circumvention of Lawful Pathways (NPRM), 88 Fed. Reg. 11,704, 11,708 (Feb. 23, 2023). The end of the Title 42 Order was expected to cause the number of migrants seeking to illegally enter the United States at the southwest border to surge to or remain at all-time highs—an estimated 11,000 migrants daily. *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314, 31,331 (May 16, 2023).

To address this expected spike in the number of migrants at the southwest border seeking to enter the United States without authorization, the Department of

Case 3:23-cv-01367-AGS-BLM   Document 49   Filed 09/13/23   PageID.1731   Page 12 of 16

Justice and DHS promulgated the Circumvention of Lawful Pathways Rule, effective May 11, 2023. *Id*. at 31,314, 31,324; *see also* 88 Fed. Reg. at 11,704. The Rule provides that most noncitizens who enter the United States during the next two years at the southwest land border or adjacent coastal borders after traveling through a country other than their native country are subject to a rebuttable presumption of asylum ineligibility unless they avail themselves of orderly processes for entry into the United States or seek and are denied protection in a third country. 88 Fed. Reg. at 31,321–23. The presumption does not apply to unaccompanied minors, and other noncitizens may be excepted from the presumption if they meaningfully seek protection in a third country through which they traveled en route to the United States, were "provided appropriate authorization to travel to the United States to seek parole, pursuant to a DHS-approved parole process," "[p]resented at a port of entry, pursuant to a pre-scheduled time and place," or "presented at a port of entry without a pre-scheduled time and place" but can "demonstrate[] by a preponderance of the evidence that it was not possible to access or use the DHS scheduling system due to language barrier, illiteracy, significant technical failure, or other ongoing and serious obstacle." 8 C.F.R. §§ 208.33(a)(2), 1208.33(a)(2). Noncitizens who are otherwise subject to presumptive asylum ineligibility may also rebut the presumption by demonstrating that "exceptionally compelling circumstances exist." *Id.* §§ 208.33(a)(3), 1208.33(a)(3). Noncitizens who are subject to the presumption of asylum ineligibility are still considered for statutory withholding of removal and protection under the Convention Against Torture and may not be removed to a country where it is likely that they will be persecuted on account of a protected ground or tortured. *See id.* §§ 208.33(b)(2), 1208.33(b)(2)(ii), (4); 88 Fed. Reg. at 11,733.

  The Rule aims to reduce irregular migration and to correspondingly decrease crowding in border facilities and projected severe strains on DHS border resources and facilitate safe, humane processing. *See, e.g.*, 88 Fed. Reg. at 31,324. It does so by encouraging migrants to seek protection in other countries or take advantage of

lawful, safe, and orderly migration pathways to enter the United States—and thus discourages illegal entry or presenting at a southwest border POE without an appointment—by generally conditioning eligibility for asylum on migrants' availing themselves of such pathways (or demonstrating exceptionally compelling circumstances). *Id.* at 31,235. Thus, noncitizens who have already traveled to Mexico with the intent of entering the United States can avoid the presumption of asylum ineligibility by prescheduling an appointment to present at a POE for orderly processing. 8 C.F.R. §§ 208.33(a)(1), 1208.33(a)(1). CBP currently uses CBP One to allow noncitizens to make such appointments. 88 Fed. Reg. at 31,317. For this purpose, CBP One allows "noncitizens located in Central or Northern Mexico who seek to travel to the United States" to submit information in advance and schedule an appointment to present themselves at" eight southwest-border POEs: Nogales, Brownsville, Eagle Pass, Hidalgo, Laredo, El Paso, Calexico, and San Ysidro. *See* "Advance Submission and Appointment Scheduling," https://www.cbp.gov/about/mobile-apps-directory/cbpone (last visited Sept. 13, 2023). Use of appointments allows these POEs to manage the flow of undocumented migrants into the POE facility, efficiently allocate border enforcement resources, and streamline processing through advanced vetting for public safety and national security concerns, thus reducing overall burdens on immigration enforcement at the border. 88 Fed. Reg. at 31,318; Defs.' Ex. 2, ¶¶ 8–12. As the Rule's preamble states, an appointment is "not a prerequisite to approach a POE . . . [or be] inspected or processed," but use of a CBP One appointment will allow noncitizens to avoid the presumption of asylum ineligibility and avoid "waiting in long lines of unknown duration at POEs." 88 Fed. Reg. at 31,317–18, 31,332, 31,365.

D. **Plaintiffs' Complaint and Motion for Preliminary Injunction**

Plaintiffs Al Otro Lado, Haitian Bridge Alliance, and ten individual noncitizens allege CBP has denied noncitizens "access to the U.S. asylum process" at Class A POEs along the U.S.-Mexico border "due to [the noncitizens'] inability to obtain

an appointment via Defendants' CBP One smartphone application." Compl. ¶ 1. Plaintiffs contend they have been subjected to an alleged policy they call the "CBP One Turnback Policy," under which asylum seekers who approach a POE from Mexico "are typically met at or near the 'limit line' . . . by CBP officers or Mexican authorities who . . . are acting at the behest of CBP. If the asylum seekers do not have a CBP One appointment confirmation or present at a date or time different from the designated appointment slot, they are turned back to Mexico." Compl. ¶ 5.

On August 10, 2023, the individual Plaintiffs filed a Motion for Preliminary Injunction, seeking to enforce what they call "the Binding Guidance" under the *Accardi* doctrine. Mot. 1. The "Binding Guidance" is the term Plaintiffs use to "[c]ollectively" refer to "the November 2021 Memo, the DHS policy as reflected in statements in the preamble to the [Pathways] Rule, and the structure of the Rule." Mot. 5; *see id.* at 2–5. The Motion contains further information about each individual Plaintiff's circumstances. The majority of the individual Plaintiffs' claims center on the San Diego Field Office, which contains the San Ysidro and Otay Mesa POEs. Of the nine Plaintiffs who seek to represent the proposed class, seven claim to have been refused access (or directed or encouraged to use CBP One) by officers at the San Ysidro or Otay Mesa Ports. *See* Pl. Ex. 2–8. One Plaintiff claims to have been turned back at the Paso del Norte pedestrian entrance to the El Paso POE. Pl. Ex. 9, ¶ 9. No individual Plaintiffs or any other noncitizen declarant alleges having been turned back at any ports within the Nogales or Laredo Field Offices. One Plaintiff (Natasha Doe) does not claim to have been turned back at all; she instead decided not to approach the Eagle Pass POE on the advice of other migrants she encountered. Pl. Ex. 14, ¶¶ 11–12. Based on these and other contentions, Plaintiffs seek a preliminary injunction prohibiting Defendants "from turning back, or directing or encouraging others to turn back, non-citizens arriving or attempting to arrive at a Port of Entry on the U.S.-Mexico border, regardless of whether those arriving non-citizens have an appointment made on the CBP One App." Defs.' Ex. 1 (Pl. Proposed Order).

# ARGUMENT

This Court should deny Plaintiffs' Motion. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Consideration of the third and fourth factors "merge[s] when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation marks omitted). Plaintiffs cannot satisfy any of these requirements.

## I. Plaintiffs Are Not Likely to Succeed on the Merits.

### A. Plaintiffs Lack Standing to Seek Prospective Injunctive Relief.

First, the individual Plaintiffs have all been inspected and processed as a result of receiving CBP One appointments, *see* Mot. at 5–6; Defs.' Ex. 2, ¶¶ 18–19. As there is thus no indication that they would be subject to the alleged CBP conduct in the future, their individual claims are now moot, and they lack standing to seek a preliminary injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *The Presbyterian Church v. United States*, 870 F.2d 518, 528–29 (9th Cir. 1989) ("[W]hen injunctive relief is sought, litigants must demonstrate a credible threat of future injury."). For this reason alone, their Motion should be denied.

### B. Plaintiffs Do Not Identify a Cause of Action for Their Claim.

Plaintiffs also cannot succeed on the merits of their *Accardi* claim. At the outset, they do not identify any cause of action to raise that claim. *See* Compl. ¶¶ 158–66; Mot. 12–14. Dismissal of a complaint (or a claim thereof) can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff lacks a cognizable legal theory when he fails to identify a

1  provision of law supplying him with a cause of action. *See, e.g.*, *Salsman v. Access Sys. Americans, Inc.*, 2011 WL 1344246, at *3 (N.D. Cal. Apr. 8, 2011) (dismissing a complaint because it "d[id] not identify the provision of the [Uniform Commercial Code] . . . that now provides [the plaintiff] with a cause of action").

Plaintiffs do not invoke any statutory cause of action to support their *Accardi* claim. Instead, Plaintiffs assume the *Accardi* doctrine itself provides a cause of action. *See* Mot. 12–14. That assumption is incorrect. The Supreme Court in *Accardi* did not abrogate the requirement that a plaintiff must identify a cause of action permitting him to bring his claim to federal court, nor did it create a new private right of action against alleged government wrongdoing (as the Court has done in other contexts, *see, e.g.*, *Bivens v. Six Unknown Agents*, 403 U.S 388 (1971)). It merely established a principle that courts can require administrative agencies to abide by their own regulations or certain internal policies. *See Accardi*, 347 U.S. 260. It is the APA that provides a private litigant with a cause of action to challenge government action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that is taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). This is consistent with the Supreme Court's and Ninth Circuit's identification of the *Accardi* principle as a "rule of administrative law." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) ("While courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, the basis for such reversals is not the Due Process Clause, but rather a rule of administrative law.") (cleaned up); *see also Brown v. Haaland*, 2023 WL 5004358, at *4–5 (D. Nev. Mar. 6, 2023) (dismissing due process claim and explaining that plaintiffs "may bring [an] *Accardi* claim under the APA"). But Plaintiffs do not invoke the APA for their *Accardi* claim, nor any other provision of law providing them with a cause of action. *See* Compl. ¶¶ 158–66; Mot. 12–14. Without a cause of action, Plaintiffs' *Accardi* claim must be dismissed, and thus it cannot succeed on its merits.