# DEFENDANTS' EXHIBIT 2

## Opposition to Plaintiffs' Motion for Preliminary Injunction

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., *et al.*, | ) |
|     *Plaintiffs,* | ) |
| | ) |
| | ) |
| v. | )      No. 23-CV-01367-AGS-BLM |
| | ) |
| Alejandro N. Mayorkas, *et al.*, | ) |
|     *Defendants.* | ) |
| | ) |

## DECLARATION OF STEPHANIE WATSON

I, Stephanie Watson, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records, and reasonably relied upon in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1.    I am the Director, Incident Response Branch, Operations Directorate, Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS).  I have been employed in this role since June 2022.  I have over 20 years of experience in the federal government and 20 years with CBP as a CBP Officer; Supervisory CBP Officer; Supervisory Program Manager; Branch Chief; and Director. The Operations Directorate has oversight over all operations at OFO's 20 major field offices, 328 ports of entry (POEs), and 16 preclearance locations.  The Operations Directorate is organized into 3 Divisions: Emergency Response; Law Enforcement Operations; and Special Operations. The Emergency Response Division, including the Incident Response Branch, provides national level oversight and coordination of OFO assets and resources for current migration surges and other OFO challenges.  The Emergency Response Division's responsibilities include forecasting

1

operational needs, coordinating field operations, and collecting and sharing mission-critical information with key stakeholders.  The Incident Response Branch has maintained oversight of OFO's assistance in operations for the enforcement of the Centers for Disease Control and Prevention's (CDC) Title 42 public health Order and transition at termination.

2.      I am familiar with the above-captioned case.  I am aware that the plaintiffs in this case challenge OFO's treatment of noncitizens without documents sufficient for lawful admission (referred to here as "undocumented noncitizens") who approach POEs on the southwest border (SWB) without a CBP One appointment, alleging that OFO has a policy of turning back such individuals.

## Policy and Operational Guidance

3.      Within OFO, Directorates at OFO Headquarters (HQ), including the Operations Directorate, are responsible for establishing and distributing policy and guidance that is applicable to OFO Field Offices across the country.  All such national-level policy and guidance is binding on the field.  Local leadership at the POE level may interpret OFO's national guidance, to operations at that particular location, thus providing appropriate messaging about that policy and how it may impact local operations.  Field leadership also has the authority to establish local guidance or protocols, based upon the unique needs and physical realities of each location.  However, in all cases, such local guidance must be consistent with the relevant HQ guidance, which must also be distributed.  A memorandum constitutes formal guidance which provides background, context, and expectations for the field to follow.  The accompanying written muster contains the detailed procedures associated with the memorandum explaining how to operationalize the guidance that is being addressed, and is typically explained in such a way

2

that is easy for the officer to understand. The muster might include more detail such as screenshots of the secondary system or examples of situations related to the guidance.

4.     On November 1, 2021, the Acting Commissioner of CBP issued a memorandum titled, *Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border Land Ports of Entry*. A true and accurate copy is attached as Exhibit A to this declaration. This memorandum directed Field Offices to take steps to increase processing of undocumented noncitizens, including through the use of technology to help facilitate processing. The memorandum articulated that all undocumented noncitizens seeking to enter a POE must be processed as expeditiously as possible, and that undocumented noncitizens are not required to use available CBP technology to submit advance information in order to be processed. The memorandum further directed officers not to instruct travelers that they must return to the POE at a later time, or travel to a different POE for processing, absent a POE closure. This memorandum was distributed to the SWB field offices on or about November 2, 2021.

5.     Following the issuance of the November 2021 memorandum, OFO developed and issued operational guidance instructing ports to process undocumented noncitizens consistent with the November 2021 memorandum, the 2022 declaratory judgment in *Al Otro Lado v Mayorkas*, and the anticipated end of the Title 42 public health Order. This HQ policy guidance outlined general principles, including the instruction that port leadership should take operationally feasible steps to increase their capacity to process undocumented noncitizens. The HQ policy guidance further directed each Field Office on the SWB to apply the general principles outlined in the policy and develop their own operational plans for their specific operational environments. In accordance with this guidance, each Field Office developed their

Defendants' Ex. 2 - PI Opp.

own local protocols and procedures for processing migrants following the lifting of Title 42, which addressed details such as how many people may be safely processed at a particular POE, where and how many officers to assign at a given location, and steps to ensure safe conditions for individuals waiting in line.

6.      On May 11, 2023, OFO HQ issued a memorandum and an associated muster titled *Post-Title 42 Port Operations* to all Field Offices.  A true and accurate redacted copy of that memorandum and muster is attached as Exhibit B to this declaration.  The memorandum and muster contained in Exhibit B contain redactions to protect sensitive information, including the contact information of CBP personnel.  It also includes redactions to certain information which is law enforcement sensitive, including screen shots of OFO's processing systems and details of how OFO exercises its law enforcement discretion to take certain enforcement actions.  As noted above, it is typical for OFO HQ to issue guidance to the field in this manner.  This memorandum described the lifting of the Title 42 public health Order and directed OFO to return to the inspection and processing of all noncitizens arriving in the United States pursuant to Title 8 of the U.S. Code.  Accordingly, the memorandum outlined that noncitizens could no longer be prevented entry under Title 42 at the U.S.-Mexico international boundary line, nor could they be subject to Title 42 expulsions.  The memorandum specified that OFO personnel may not "turn back, redirect, or prevent any noncitizen without appropriate documents sufficient for admission from applying for entry at any POE."  The memorandum further specified that undocumented noncitizens are strongly encouraged, but not required, to use the CBP One mobile application to schedule an appointment to present at a POE.  All POEs were reminded to process noncitizens in accordance with the November 2021 memorandum.

4

7.      I have personally discussed the requirements of the OFO HQ policies discussed above with officials across the SWB, as part of at least weekly engagements with Field Office leadership and SWB POE managers, since the policies were issued and most recently in a discussion with these same individuals on August 16, 2023.  In these conversations, I have reiterated and emphasized to the field that all noncitizens who present themselves at a POE to apply for admission, regardless of whether they have scheduled an appointment through CBP One, must be processed as soon as operationally able, and may not be turned away from POEs.

**CBP One's Role in Maintaining Safe and Secure Conditions at the Border and Harm if CBP Were Prevented from Using the App**

8.      The scheduling capability available in the CBP One mobile application for undocumented noncitizens to schedule an appointment at a POE is a critical tool for OFO in its efforts to ensure a safe and secure environment for the travelling public and to increase the number of such noncitizens processed at POEs on the SWB.  Information submitted in advance as part of the process also enables POEs to streamline processing of noncitizens upon arrival. Specifically, the advance information received via the CBP One mobile application enables POEs to vet noncitizens prior to their arrival, which provides a mechanism for POEs to more efficiently manage and allocate limited resources to process different groups of noncitizens.  For example, if advance vetting reveals that a noncitizen with an appointment has criminal history or may pose a public safety risk, OFO can plan for sufficient resources to address those risks upon arrival.  Similarly, vetting may reveal that there are multiple family units arriving with appointments, and thus the POE can plan for and ensure they are equipped to meet the humanitarian needs of such families.  Moreover, noncitizens who arrive with a CBP One appointment arrive at a pre-arranged, planned time, and in orderly groups.  The POEs expect

5

their arrival and can ensure sufficient staffing and resources to safely and efficiently process the individuals, in most cases at the pre-arranged time and location within the POE.

9.     The use of the CBP One mobile application thus helps to enable ports to process more undocumented noncitizens than the can process without the appointment system.  Importantly, this appointment system allows CBP to distribute resources to all of its mission sets at POEs, including the processing of lawful trade and travel and protecting national security, while still tending to the important mission of processing undocumented noncitizens.  From a safety standpoint, CBP One also benefits noncitizens.  This is because the ability to schedule an appointment means that noncitizens seeking to enter the United States are not required to wait outside a POE to be processed where they may be exposed to the elements, such as high temperatures and potential safety risks.

10.     CBP strives to maximize the number of available CBP One appointments.  While noncitizens are encouraged to schedule an appointment through CBP One, an appointment is not required to access a U.S. POE.  That said, POEs prioritize the processing of those with CBP One appointments.  OFO's ability to process noncitizens who arrive without appointments varies based on operational realities that are unique to each POE.  Since May 12, 2023. CBP data shows that, as of August 23, 2023, that OFO has processed approximately 112,000 noncitizens who provided advance information and scheduled their arrival through CBP One and approximately 47,000 noncitizens who did not schedule their arrival.  At the eight POEs that provide CBP One appointments, these numbers, by Field Office, are as follows: El Paso: approximately 16,000 noncitizens who provided advance information and scheduled their arrival through CBP One and approximately 6,000 noncitizens who did not schedule their arrival; Laredo: approximately 57,000 noncitizens who provided advance information and scheduled their arrival through CBP

Defendants' Ex. 2 - PI Opp.

One and approximately 19,500 noncitizens who did not schedule their arrival; San Diego: approximately 32,000 noncitizens who provided advance information and scheduled their arrival through CBP One and approximately 12,000 noncitizens who did not schedule their arrival; Tucson: approximately 6,000 noncitizens who provided advance information and scheduled their arrival through CBP One and approximately 4,000 noncitizens who did not schedule their arrival. CBP also continues to take steps to improve the CBP One app, including but not limited to, enhancing the user experience to better serve users seeking to schedule an appointment.

11.     If CBP were prevented from prioritizing the processing of noncitizens with appointments who submitted advance information, or prevented from using such appointments to manage travel into the POEs, I expect that there would be significant harm to port operations, as well as to noncitizens themselves.  Such an action would, in fact, likely serve to *decrease* the number of such noncitizens able to be processed, and would require OFO to divert additional staffing and resources to the processing of such individuals.  Such diversion of resources has, in the past, had a significant negative impact on OFO operations, as well as on the broader U.S. public and U.S. economy.

12.     In the absence of the ability to prioritize those with appointments and to manage the pace of processing undocumented noncitizens, POEs can quickly become overcrowded as more undocumented noncitizens are required to be held at the POEs.  Overcrowding can have disastrous effects because OFO's facilities are short-term holding facilities designed to hold a limited number of individuals for a limited period of time.  As such, OFO's facilities lack showers, beds, laundry facilities, and space for exercise and recreation.  Similarly, OFO's facilities lack equipment necessary to meet the needs of families with small children or individuals with unique medical needs. The limited design and function of OFO's facilities

Defendants' Ex. 2 - PI Opp.

makes it difficult for OFO to segregate vulnerable populations from the rest of those in custody. Additionally, as the numbers of individuals able to be processed decreases, wait times would likely increase for all arriving individuals. Individuals may end up waiting on bridges outside POEs for extended periods of time, exposed to the elements and without access to showers, hygiene supplies, or toilet facilities.  Limiting the use of CBP One and decreasing the number processed per day would only exacerbate any humanitarian concerns.

### Allegations Related to Noncitizens without CBP One Appointments

13.     In my role as Director of the Incident Response Branch, I am aware of certain allegations and issues relating to the processing of undocumented noncitizens at certain SWB POEs, particularly those who arrive without CBP One appointments. CBP generally receives such complaints and becomes aware of issues through non-governmental organizations (NGOs), as part of CBP's extensive outreach and engagement with such entities.  I am aware that, at the local level, Port and Field Office leadership engage regularly with NGOs and other entities to address and to resolve identified issues.  At the HQ level, similar national level engagements occur recurrently with NGOs and other entities to address concerns.

14.     I am aware of allegations that noncitizens without CBP One appointments were refused access to POEs, were "turned back," or were told that they must make a CBP One appointment to enter the POE.  OFO has learned that in some of the alleged situations, the noncitizens s in question were not, in fact, refused access to POEs, but were rather informed by CBP officers that they may need to wait to enter the POE for a period of time due to resource and capacity constraints.  In other alleged situations, OFO discovered that when wait times for those without CBP One appointments were expected to be long, CBP officers informed

8

undocumented noncitizens about the existence of the CBP One appointment process, as an option if they did not wish to wait at the physical border.

15.     I am also generally aware that allegations have been made by individual noncitizens who claim that they have been unable to access POEs.  OFO has looked into these allegations and discovered that, at times, undocumented noncitizens without a CBP One appointment may have been prevented from accessing a U.S. POE by officials of the Mexican government.  Mexico, as a sovereign country, has the right to manage migration in whatever manner it deems appropriate, and accordingly, has implemented certain exit controls applicable to noncitizens leaving Mexican territory.  CBP does not, in any way, direct or control the Mexican government or direct them to take any actions on Mexican soil.

16.     That said, OFO communicates regularly with the Mexican government about all manner of cross-border issues, including vehicle and cargo wait times, medical and other emergencies, and potential safety and security risks.  Additionally, OFO sometimes receives advance notification from Mexican authorities about groups of noncitizens enroute to POEs for whom OFO may wish to provide specialized attention upon arrival, such as unaccompanied children or individuals needing immediate emergency care.  In these situations, the Mexican government provides this type of information for awareness and as a courtesy.  In none of OFO's interactions with the Mexican government does OFO require the Mexican government to take certain action.

17.     I am also aware that several bridges which abut or span the U.S.-Mexico border in Texas are owned and operated by commercial companies, by private owners, or by the local municipality, on either or both the U.S.- and Mexican side of the border.  These entities may have their own fees for use, rules or policies, and may make their own independent decision

9

about who may enter the bridge.  CBP similarly does not have any role, to include input, in any such restrictions.

### Plaintiffs' Processing

18.     I understand that, independent of the above captioned case, several of the individual noncitizen plaintiffs have received appointments through their previously established CBP One registrations and appointment applications.  These noncitizen plaintiffs include: an individual known as Pablo Doe, who received a CBP One appointment scheduled for August 18, 2023 at El Paso, Texas; an individual known as Natasha Doe, who received a CBP One appointment scheduled for August 23, 2023 at Laredo, Texas;  an individual known as Elena Doe, who received a CBP One appointment scheduled for August 22, 2023 at San Ysidro, California; and an individual known as Alexander Doe (though I understand that Alexander Doe has withdrawn his claim), who received a CBP One appointment scheduled for August 10, 2023 at San Ysidro, California.

19.     Further, OFO manually scheduled CBP One appointments for 16 individuals who I understand to be either individual noncitizen plaintiffs in the above captioned case, proceeding under the pseudonyms of Diego Doe, Luisa Doe, Laura Doe, Somar Doe, Guadalupe Doe, Michelle Doe, or noncitizen plaintiffs' accompanying family members.  These appointments were scheduled for August 18, and August 19, 2023 at the San Ysidro POE.  I am aware that these named individual noncitizen plaintiffs and their family members may have encountered difficulties exiting Mexico and entering the San Ysidro POE.  I understand that these challenges, if true, were the result of exit controls implemented by the Mexican government specifically related to whether the individuals had confirmed CBP One appointment.  As noted above, CBP does not, in any way, direct or control the Mexican government nor play any role in

Defendants' Ex. 2 - PI Opp.

any decisions by the Mexican government \ I nonetheless understand that all 16 individuals have been processed at the San Ysidro POE consistent with the manually scheduled CBP One appointments.

20.     I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.


Executed this 13th day of September, 2023.


STEPHANIE E WATSON   Digitally signed by STEPHANIE E WATSON
Date: 2023.09.13 16:21:41 -04'00'

Stephanie Watson
Director, Incident Response Branch
Operations Directorate
Office of Field Operations
U.S. Customs and Border Protection

Defendants' Ex. 2 - PI Opp.

# EXHIBIT A



1300 Pennsylvania Avenue, NW
Washington, DC 20229

U.S. Customs and
Border Protection

*Commissioner*

November 1, 2021

| | |
|---|---|
| MEMORANDUM FOR: | William A. Ferrara<br>Executive Assistant Commissioner<br>Office of Field Operations |
| FROM: | Troy A. Miller<br>Acting Commissioner<br>U.S. Customs and Border Protection |
| SUBJECT: | **Guidance for Management and Processing of**<br>**Undocumented Noncitizens at Southwest Border**<br>**Land Ports of Entry** |

This memorandum provides updated guidance for the management and processing of noncitizens who, without proper documents ("undocumented noncitizens"), present at land ports of entry (POEs) along our Southwest Border, including those who may be seeking humanitarian protection in the United States. This memorandum also rescinds and supersedes the November 27, 2019 memorandum from the former Commissioner, *Prioritization-Based Queue Management*; and CBP Office of Field Operations (OFO) April 27, 2018 and April 30, 2020 memoranda, *Metering Guidance*. Today, Secretary Mayorkas rescinded Secretary Nielsen's June 5, 2018 memorandum, *Prioritization-Based Queue Management*, upon my recommendation.

The ability to process undocumented noncitizens in a timely manner is impacted by a wide range of factors, including staffing constraints, outdated infrastructure, and significantly at this time, the COVID-19 pandemic. The COVID-19 pandemic specifically has limited processing and holding capacity based on protocols to protect the workforce, the noncitizens whom we encounter at the POEs, and the American public. The Centers for Disease Control and Prevention's August 2, 2021 Public Health Order, which was issued pursuant to Title 42 of the U.S. Code and suspends the introduction of certain non-citizens into the United States for public health reasons, remains in force, and we will continue to implement it as applicable. At all times, the capacity to process undocumented noncitizens must take into account CBP's other vital priorities, including our mission to protect public safety and national security, interdict the flow of narcotics and contraband, and facilitate lawful trade and travel.

Defendants' Ex. 2 - PI Opp.

Guidance for Management and Processing of Undocumented Noncitizens at the SWB LPOEs
Page 2

Even before the COVID-19 pandemic, processing capacity was limited due to increasingly large volumes of lawful trade and travel. During the five years preceding the pandemic, CBP processed, on average, 326 inadmissible individuals each day at POEs across the Southwest land border. At the same time, CBP apprehended, on average, a much larger number—1,266 individuals each day—between POEs.

As a complement to enforcement efforts between POEs and to incentivize an alternative to such unlawful crossings, I instruct Southwest Border OFO management to consider and take appropriate measures, as operationally feasible, to increase capacity to process undocumented noncitizens at Southwest Border POEs, including those who may be seeking asylum and other forms of protection. As part of this effort, CBP personnel should continue to employ and should further accelerate ongoing steps to leverage technological and processing efficiencies to streamline POE processing.

Possible additional measures include the innovative use of existing tools such as the CBPOne™ mobile application, which enables noncitizens seeking to cross through land POEs to securely submit certain biographic and biometric information prior to arrival and thus streamline their processing upon arrival. OFO also should accelerate ongoing efforts to digitize processing at POEs and more effectively use data to increase throughput. In developing these solutions, CBP should, as appropriate, collaborate with interested non-governmental organizations and other key partners, consistent with applicable privacy protections and civil rights and civil liberties.

Importantly, however, asylum seekers or others seeking humanitarian protection cannot be required to submit advance information in order to be processed at a Southwest Border land POE. The submission (or lack thereof) of advance information should not influence the outcome of any inspection. CBP will continue to make admissibility and processing determinations on a case-by-case-basis at the POE.

A POE's capacity to process undocumented noncitizens is influenced by operational realities and circumstances that could change day to day and could include unanticipated incidents, emergencies, or challenges. However, POEs must strive to process all travelers, regardless of documentation status, who are waiting to enter, as expeditiously as possible, based on available resources and capacity. At all times, the capacity to process undocumented noncitizens must take into account CBP's other vital priorities, including our mission to protect public safety and national security, interdict the flow of narcotics and contraband, and facilitate lawful trade and travel.

CBP may manage the intake of undocumented noncitizens at POEs, including by providing staffing at the border line to facilitate and manage safe and orderly travel into the POE. In all cases, however, undocumented noncitizens who are encountered at the border line should be permitted to wait in line, if they choose, and proceed into the POE for processing as operational capacity permits. Absent a POE closure, officers also may not instruct travelers that they must return to the POE at a later time or travel to a different POE for processing. Officers also may not preclude those in line from departing and returning at a later time. Once in the United States, an individual must be inspected and processed by CBP Officers and may not be directed to return across the land border without appropriate processing.

Guidance for Management and Processing of Undocumented Noncitizens at the SWB LPOEs
Page 3


Based on past, current, and expected volumes of individuals seeking entry at Southwest Border land POEs, there may be extended wait times in processing lines.

This Administration has outlined a comprehensive strategy to expand safe, orderly, and humane pathways for migration, including for noncitizens who may be seeking protection to access the United States. *See* Executive Order 14010, 86 FR 8267 (2021). This guidance is issued in furtherance of that strategy and is effective immediately.

# EXHIBIT B



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and
Border Protection**

May 11, 2023

MEMORANDUM FOR:  Executive Directors, Headquarters
Directors, Field Operations
Office of Field Operations

FROM:  Casey Durst  PII
Executive Director, Operations
Office of Field Operations

Matthew S. Davies  PII
Executive Director, Admissibility and Passenger Programs
Office of Field Operations

SUBJECT:  Post-Title 42 Port Operations

On Thursday, May 11, 2023 at 23:59 ET, the Centers for Disease Control and Prevention (CDC) will lift the Title 42 Public Health Order. Moreover, the Department of Homeland Security (DHS) will no longer require noncitizen, non-lawful permanent resident travelers entering the United States via land ports of entry (POEs) and ferry terminals to be fully vaccinated against COVID-19 and provide related proof of vaccination upon request. The lifting of Title 42 will affect POE operations for Office of Field Operations (OFO) personnel as U.S. Customs and Border Protection (CBP) resumes all Title 8 processing operations.

OFO will return to inspecting and processing all noncitizens arriving in the United States pursuant to Title 8 of the U.S. Code. As such, noncitizens will no longer have their entry prevented or be subject to Title 42 expulsions. These changes in OFO's operational landscape will be addressed through strategic resource leveraging in the following areas of consideration: pre-processing steps, port security, inspecting of all travelers including noncitizens, and efficient, safe release from POEs.

As OFO returns to processing undocumented noncitizen applicants for admission under Title 8, noncitizens who lack documents sufficient for admission are strongly encouraged, but not required, to use the CBP One™ mobile application to schedule an appointment to present at a POE. All POEs will process noncitizens in accordance with the November 1, 2021 memorandum titled, *Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border Land Ports of Entry,* and their respective field office plans. OFO will not turn back, redirect, or prevent any noncitizen without appropriate documents sufficient for admission from applying for entry at any POE in a safe, orderly, and humane manner.

For Official Use Only
Law Enforcement Sensitive

Post-Title 42 Port Operations
Page 2

OFO will manage the intake of noncitizens arriving at POEs, as operationally feasible, including the identification and funneling of noncitizens that have utilized CBP One™ to schedule their arrival.  Where feasible, travelers will be processed in the following priority order upon arrival:

1. U.S. Citizens, Lawful Permanent Residents, and Trusted Travelers
2. Travelers in possession of valid entry documents
3. Noncitizens with CBP One™ scheduled arrivals
4. Noncitizens without CBP One™ scheduled arrivals

Should the integrity of POEs or the safety of OFO personnel and the traveling public become jeopardized by operational realities, the Acting Commissioner's authority to temporarily close a POE is delegated to Senior Executive Service members.  To maintain the integrity of POEs and safety of OFO personnel and the traveling public, POEs will take active, preventative measures when necessary, including the suspension of operations when required due to security concerns.

Please ensure this memorandum and the attached muster are distributed to port personnel. Should you require additional information on operational matters, please contact Petra Horne, Deputy Executive Director, Operations, at PII ████████ for policy concerns related to the processing of applicants for admission, please contact Emilia Bakopoulos, (A) Deputy Executive Director, Admissibility and Passenger Programs, a PII ████████

For Official Use Only
Law Enforcement Sensitive

Defendants' Ex. 2 - PI Opp.

## **Muster**

**Date**:                          May 11, 2023

**Topic**:                        Post-Title 42 Port Operations

**Headquarters POCs**:     Operational Concerns: Incident Response Branch
                                   PII ███████████████████████

                                   Admissibility Policy Concerns: SEAL PII ██████████

Overview:  On May 11, 2023, at 23:59 ET, the Centers for Disease Control and Prevention's (CDC) will lift the Title 42 Public Health Order.  In alignment with the termination of the Presidential Proclamation on air travel, the Department of Homeland Security (DHS) will no longer require noncitizen, non-lawful permanent resident travelers entering the United States via land ports of entry (POEs) and ferry terminals to be fully vaccinated against COVID-19 and provide related proof of vaccination upon request (Title 19 Temporary Travel Restrictions). With the lifting of these restrictions, U.S. Customs and Border Protection (CBP), Office of Field Operations (OFO) personnel at POEs will ensure:

- CBP officers will not turn back, redirect, or prevent the entry of a noncitizen without documents sufficient for admission at any POE.
- All travelers, including noncitizens without documents sufficient for admission, will be processed in a safe, orderly manner under Title 8.
- OFO will balance the need to process noncitizens without documents sufficient for admission at land POEs with the duty to execute the critical priority missions to protect the American people, safeguard our borders, and enhance the Nation's economic prosperity through the facilitation of lawful trade and travel.


Pre-Processing:
- Through DHS announcements and initiatives, noncitizens without documents sufficient for admission will be encouraged, but not required, to schedule an appointment to present at a POE through the CBP One™ mobile application.
  - POEs may prioritize the inspection and processing of noncitizens without documents sufficient for admission with CBP One™ appointments over those without CBP One™ appointments.

For Official Use Only
Law Enforcement Sensitive

Post-Title 42 Port Operations
Page 2

- The lifting of Title 42 and its related measures, including anticipated operational effects, does not change OFO's commitment to the facilitation of lawful trade and travel; where operationally feasible, travelers will be processed in the following priority order upon arrival:
    1. U.S. Citizens (USCs), Lawful Permanent Residents (LPRs), and Trusted Travelers
    2. Travelers in possession of valid entry documents
    3. Noncitizens with CBP One™ scheduled arrivals
    4. Noncitizens without CBP One™ scheduled arrivals
- If HQ-issued signage is available at a POE, it should be posted in a manner that maximizes public awareness of available processing lines for each of the above 4 categories, in languages most useful to demographics encountered at the POE.
- Where physical queuing space is limited due to infrastructure or security measures, and staging multiple pedestrian lines for each of the above 4 categories is not possible, the following structures should be utilized:
    - Where only 3 lines are possible:
        - Line 1:  USCs, LPRs, Trusted Travelers, and travelers with valid entry documents
        - Line 2:  Noncitizens without documents sufficient for admission with CBP One™ scheduled arrivals
        - Line 3:  Noncitizens without documents sufficient for admission without CBP One™ scheduled arrivals
    - Where only 2 lines are possible:
        - Line 1:  USCs, LPRs, Trusted Travelers, and travelers with valid entry documents
        - Line 2:  Noncitizens without documents sufficient for admission
- Noncitizens without documents sufficient for admission arriving by vehicle should not be prioritized for secondary processing over pedestrian arrivals.
- When noncitizens are required to wait outdoors on U.S. soil for extended periods of time, OFO will ensure the following resources are all regularly made available:
    - Cover from sun and/or weather conditions
    - Water and food (which may include snacks)
    - Toilet facilities
- OFO will assist in providing urgent medical care when required, to include health screenings when necessary.
    - POEs should leverage contract medical support, where available, and certified medical professionals, such as emergency medical technicians and paramedics.

Port Security:
- POEs will take active, preventative measures when necessary, including the suspension of operations when required due to security concerns.
    - The use of barricades, fencing, and alike infrastructure should be leveraged where available and appropriate.

For Official Use Only
Law Enforcement Sensitive

Post-Title 42 Port Operations
Page 3

- o Available law enforcement assets such as Special Response Team operators and/or Mobile Field Force personnel should be deployed where available and appropriate.
- o 
- o

- When n
circumstances reasonably preclude the exercise of such authority by the Acting Commissioner, the authority to close temporarily any OFO office or POE along the southwest border between the United States and Mexico, or to temporarily take any other lesser action that may be necessary to respond to the specific threat to human life, is delegated (See *Delegation Order 22-027* dated December 05, 2022) to Senior Executive Leadership.

Processing:
- Noncitizens without documents sufficient for admission who arrive with confirmed CBP One™ scheduled arrivals will be processed in Law Enforcement Sensitive Law Enforcement Sensitive as it confirms facial submission, displays user provided information, and allows for more efficient secondary processing.
- While noncitizens without documents sufficient for admission with CBP One™ scheduled arrivals will be prioritized for processing over those without scheduled arrivals, a scheduled arrival will not determine the processing disposition applied under Title 8; each processing disposition will be determined on a case-by-case basis, considering the totality of circumstances.
  - o All available processing dispositions under Title 8 should be considered.
  - o Custody determinations with U.S. Immigration and Customs Enforcement (ICE), Enforcement Removal Operations (ERO) will continue.
- DHS previously established a process that provides certain nationals of Cuba, Haiti, Nicaragua, and Venezuela (CHNV), along with their qualifying immediate family members, the opportunity to request advance authorization to travel to the United States to seek a discretionary grant of parole at an air POE.
  - o CHNV noncitizens without sufficient documents for admission encountered by OFO at a land border POE, may in the exercise of discretion, based on the facts and circumstances known to the officer, be offered the opportunity to withdraw their application for admission and return to Mexico in lieu of removal proceedings, and remain eligible for the aforementioned parole process provided that such Withdrawal (WD) would be their first with CBP, whether Border Patrol or OFO after either January 9, 2023 (for Cubans, Haitians and Nicaraguans), or December 20, 2022 (for Venezuelans); ports are reminded that when processing a

Post-Title 42 Port Operations
Page 4

CHNV national for a WD of their application for admission, the provisions of the Discretionary Authority Directive remain in effect.
o   The following statement must be read in its entirety in a language understood by the CHNV noncitizen prior to permitting any WD:

"You may withdraw your application for admission to the United States and return to Mexico instead of being placed in removal proceedings.  Withdrawal of your application is a voluntary decision.  You are not required to withdraw your application for admission and depart, and you may instead decide to remain in the United States to be placed in removal proceedings and seek relief or protection from removal, including asylum, if appropriate.

The United States currently offers a parole process that allows Cuban, Haitian, Nicaraguan or Venezuelan nationals and their immediate family members to come to the United States.  That parole process provides a safe and orderly way for Cuban, Haitian, Nicaraguan or Venezuela nationals who lack sufficient U.S. entry documents to be considered, on a case-by-case basis, for advance authorization to travel and a temporary period of parole into the United States for up to 2 years.

Participants in that process must have a supporter in the United States, pass certain security checks, and fly to an interior location in the United States.  To seek participation in that process, however, you must be outside the United States.

You may choose to depart the United States voluntarily a single time and still be eligible for the parole process.  You are being given an opportunity now to withdraw your application for admission and return to Mexico so that you remain eligible for that parole process."

• CBP officers will determine the appropriate processing disposition under Title 8, including Expedited Removal (ER), Notice to Appear (NTA), and where appropriate, WD, for each noncitizen on a case-by-case-basis at the time the noncitizen presents themselves at the POE.
  o   

For Official Use Only
Law Enforcement Sensitive

Post-Title 42 Port Operations
Page 5

**Law Enforcement Sensitive**

# Law Enforcement Sensitive

- Noncitizens seeking to withdraw their application for admission on the southwest border will continue to be provided with information via Form I-275.
- Regardless of the nationality of a noncitizen without documents sufficient for admission, including the CHNV population, POEs will continue to process individuals who present national security or public safety concerns for ER, including referral to U.S. Citizenship and Immigration Services (USCIS) for credible fear determination when applicable, and detention coordination with ERO.
  - If OFO cannot complete a removal when appropriate, ERO will be contacted; if ERO declines custody, it should be annotated Law Enforcement Sensitive
- If an NTA disposition is determined to be appropriate given the totality of circumstances, noncitizens without documents sufficient for admission that presented at a POE with a CBP One™ scheduled arrival may be considered for parole, on a case-by-case basis, for a period up to 24 months to attend removal proceedings.
  - If an NTA disposition is determined to be appropriate given the totality of circumstances, noncitizens that presented at a POE without a CBP One™ scheduled arrival may be considered for parole, on a case-by-case basis, for a period up to 12 months to attend removal proceedings.
  - # Law Enforcement Sensitive

Post-Title 42 Port Operations
Page 6

■ If that determination occurs, a Form I-213 is still required to record the arrival and inadmissibility of the noncitizen.
- Processing of unaccompanied children (UC) remains unchanged.

<u>Release:</u>
- OFO only provides short-term holding of individuals for processing, repatriation, release, or transfer to other federal agencies.
- OFO turns all individuals over to law enforcement partners or releases directly from POEs; however, OFO will continue to coordinate with non-governmental organizations and state and local partners to enable support for noncitizens who may seek assistance upon release from POEs.
- If OFO's detention and/or transportation resources are unable to match noncitizen apprehension volumes, the processing of some or all individuals (see aforementioned priority order) may need to be halted, suspended, or limited due to the suspension of POE operations.

For Official Use Only
Law Enforcement Sensitive