# DEFENDANTS' EXHIBIT 4

## Opposition to Plaintiffs' Motion for Preliminary Injunction

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Al Otro Lado, Inc., <br>     *Plaintiffs,* <br> <br> v. <br> <br> Alejandro N. Mayorkas, *et al.*, <br>     *Defendants.* | No. 3:23-CV-01367-AGS-BLM |

**DECLARATION OF SAMUEL B. CLEAVES**

I, Samuel B. Cleaves, pursuant to 28 U.S.C § 1746, and based on my personal knowledge and information made known to me in the course of my employment, hereby declare as follows relating to the above-captioned matter.

1. I am the Assistant Director Field Operations (ADFO) for the El Paso Field Office (EPFO), Office of Field Operations (OFO), for U.S. Customs and Border Protection (CBP) and have served in this capacity since October of 2022.

2. In this capacity, I oversee all aspects of Border Security within the El Paso Field Office to include the facilitation of trade and travel and the processing of those subsequently determined to be in violation of law.

3. Prior to my current position, I served as the Assistant Port Director (APD) for the Port of El Paso from July of 2017 to October of 2022. I have also previously held the positions of Watch Commander (WC) and Chief Supervisory CBP Officer (Second Line) at the Port of El Paso; Supervisory CBP Officer at the Ports of Champlain, New York, and Columbus, New Mexico. I began my career with the Immigration and Naturalization Service in 1996 before transferring to the United States Customs Service in 1999.

4. I make this declaration to explain EPFO's policies and procedures governing the processing and treatment of noncitizens who lack documents sufficient for admission to the United States; explain steps taken to remind personnel of their obligations

under these policies and procedures; and explain steps the Field Office has taken to address concerns or complaints identified relating to this processing.

5. The EPFO is a busy field office with dynamic operations. EPFO has seven ports of entry, with some having multiple border crossings. The Port of El Paso alone includes fifty-three (53) primary lanes spread out over eight major operational areas such as three passenger land border crossings for vehicles and pedestrians, one commercial import facility, one international airport, one large foreign trade zone, and two international railroad crossings.

6. It is also important to note that each POE in the Field Office has its own unique operating environment. Below is a description of current operations as it relates to noncitizen processing at ports in the El Paso Field Office.

7. The Port of El Paso includes the Bridge of the Americas (BOTA), Paso Del Norte (PDN), and Stanton land border crossings. Noncitizens without documents sufficient for admission (or undocumented noncitizens, as used throughout this declaration) who are encountered at Stanton are transported to PDN for processing. For safety and enforcement, this port maintains officers at the international boundary 24/7 at all three bridges, when operationally feasible. The international boundary for each of these locations is on a bridge. Officers are assigned to maintain operational awareness, monitor the heavy flow of pedestrians at these locations, and ensure a safe and orderly environment. The nature of the potential threat varies. For example, the bridges frequently experience Entry Without Inspection (EWI) attempts. Assaults, incursions, and subjects with weapons are encountered in these areas as well. Before officers were assigned to the bridges, a rappelling threat was common, as undocumented noncitizens would attempt to rappel from the bridges to the ground, which led to injuries. Thus, having officers at the line helps to deter such unsafe actions. In addition, the pedestrian walkways are narrow, and traffic must be regulated to ensure safety. For example, BOTA's walkway is completely enclosed in chain link, an additional safety challenge.

8. The Port of Ysleta, which was part of the port of El Paso until March 2020, also maintains officers at the international boundary 24/7 when operationally feasible. The international boundary at this location is on a bridge, and the port faces similar

security challenges to those faced at the El Paso POE, including EWIs, assaults, incursions, and subjects with weapons. Additionally, Ysleta's walkway is both elevated and completely enclosed in chain link, an additional safety challenge.

9. The Port of Marcelino Serna (Tornillo), which includes the Ft. Hancock Border Crossing, does not assign officers at the international boundary but conducts periodic security and enforcement sweeps as necessary. Undocumented noncitizens who are encountered at Ft. Hancock are transported to the Port of Marcelino for processing.

10. The Port of Presidio, which includes the Boquillas Border Crossing, maintains officers at the international boundary 24/7 when operationally feasible. This port is very remote and over a 3-hour drive from the nearest port of entry for assistance. The international boundary of this location is also on a bridge. Officers are assigned to deter EWI attempts and monitor the flow of pedestrians (documented and undocumented) to ensure a safe and orderly environment. There are no CBP officers assigned to the international boundary for the Boquillas Border Crossing, which has one pedestrian primary lane. Inspections are conducted remotely by the El Paso Operations Center in El Paso, Texas via kiosk with the assistance of the National Park Service in Big Bend National Park. Undocumented noncitizens are very rarely encountered at this crossing. If such a noncitizen were encountered, they would be transported to Presidio for processing.

11. The Port of Santa Teresa does not assign officers at the international boundary but conducts periodic security and enforcement sweeps as necessary. Undocumented noncitizens encountered at this location are processed on-site.

12. The Port of Columbus, which includes the Antelope Wells Border Crossing, does not assign officers at the international boundary but conducts periodic security and enforcement sweeps as necessary. Undocumented noncitizens encountered at the Port of Columbus are processed on-site. The Antelope Wells Border Crossing has 2 primary lanes (1 vehicle, and 1 pedestrian). Undocumented noncitizens who are encountered at this border crossing are transported to the Port of Columbus for processing.

13. I am familiar with the memorandum entitled *Guidance for Management and Processing of Undocumented Noncitizens at Southwest Border Land Ports of Entry*,

issued by the CBP Commissioner on November 1, 2021.  The Field Office distributed it to the ports on November 2, 2021 at 8:50 am mountain time.  At the time the November 2021 memo was issued, the Title 42 public health Order remained in effect.  Thus, the November 2021 memo made clear that it would be applicable to operations following the expiration of the Title 42 public health Order.

14. Similarly, as the eventual expiration of Title 42 public health Order approached, OFO HQ disseminated the memorandum entitled *Post Title 42 Operations*, issued by the Executive Directors of Operations and Admissibility and Passenger Programs on May 11, 2023.  This memorandum and muster was received by the Field Office on May 11, 2023 at 12:39 pm mountain time and further disseminated to the ports on May 11, 2023 at 1:34 pm mountain time.

15. Additionally, prior to the expiration of Title 42, OFO HQ had directed field offices on the southwest border to develop local plans.  On May 9, 2023, at 11:44 am mountain time, the EPFO *Post – Title 42 (T42) Processing* Plan was finalized and disseminated to the ports.  This plan was disseminated to the ports again as a reminder on May 11, 2023 at 1:04 pm mountain time.  In addition, this plan was explained to port leadership and personnel verbally to ensure personnel were aware of the expectation when encountering undocumented noncitizens.  Prior to May 9, 2023, I had met with the leadership teams of all ports when creating EPFO's Post Title 42 plans.  And on May 9, 2023, the Director Field Operations (DFO) held a regularly scheduled executive leadership meeting.  During this meeting I explained and outlined EPFO's Post Title 42 plans in detail to all of the Port Directors.

16. These policies indicate that ports may not turn back undocumented noncitizens or require them to travel to a particular POE to be processed, and that ports must permit noncitizens to wait to be processed.  And the plan provides that undocumented noncitizens may be encouraged to utilize the CBP One™ application to schedule an appointment to present at a POE but are not required to make an appointment in order to be processed.  All ports, including ports at which CBP One™ is not available, must process arriving undocumented noncitizens in an expeditious manner based on available resources.

17. The PDN border crossing within the Port of El Paso is the only location that offers CBP One™ appointments within EPFO. Appointments are currently at 6:00 am and 1:00 pm every day. Those with appointments are escorted from the international boundary at PDN to a public lobby that was repurposed for processing of undocumented noncitizens with CBP One™ appointments. This lobby was previously used to process travelers with sufficient admission documents such as immigrant visa packets.

18. Undocumented noncitizens who arrive with CBP One™ appointments are processed at the PDN crossing, both by officers on-site at PDN and virtually by officers at the BOTA crossing. However, all noncitizens arriving with appointment physically stay at PDN and once processing is complete, they will either be released from the port or referred to ICE's Enforcement Removal Office (ERO) as appropriate.

19. Since May 12, 2023, and the lifting of the Title 42 public health Order, the Port of El Paso has prioritized the processing of individuals with CBP One™ appointments. All ports of entry, however, receive and process undocumented noncitizens who present themselves without appointments as operationally feasible. When a line of undocumented noncitizens does occur at a port of entry, they may be informed that they will have to wait due to capacity limitations, and information about the CBP One™ application may be provided to those waiting. However, ports of entry may encounter undocumented noncitizens without CBP One™ appointments by other methods as well. For example, such noncitizens may be encountered in various ways, including being arrested for attempting to smuggle contraband; arrested as fugitives for active arrest warrants, apprehended attempting to enter without inspection, apprehended as stowaways on railroad cars, apprehended while engaging in identity theft as impostors to travel documents that do not belong to them, or apprehended with altered or counterfeit documents.

20. I am aware of concerns expressed by non-government organizations (NGO) regarding the functionality of the CBP One™ application through various meetings and discussions with them. These concerns were generally specific to user experience and specific functionality questions. These issues were provided to CBP Headquarters, and I am aware that CBP HQ has updated the CBP One™ application

multiple times. Several NGOs have expressed to me that many of the CBP One™ updates did address some of the functionality concerns that they had observed. And they also indicated that the instructions and information provided to them at the local level about CBP One™ assisted greatly in helping users access the application.

21. Allegations of misconduct are investigated by CBP's Office of Professional Responsibility (OPR). Formal complaints are reviewed by professionalism service managers (PSM). And this would include allegations or formal complaints of noncitizens being inappropriately "turned back" or "turned around".

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 13th day of September, 2023.

_____
Samuel B. Cleaves
Assistant Director Field Operations
El Paso Field Office
Office of Field Operations
U.S. Customs and Border Protection