MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
mmarmolejo@mayerbrown.com
333 S. Grand Avenue
47th Floor
Los Angeles, CA 90071-1503
Telephone: +1.213.229.9500
Ori Lev (DC Bar No. 452565)
(*pro hac vice*)
olev@mayerbrown.com
1999 K Street, N.W.
Washington, DC 20006
Telephone:  +1.202.263.3000
Facsimile:   +1.202.263.3300

VINSON & ELKINS LLP
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
smedlock@velaw.com
2200 Pennsylvania Ave., N.W., Ste. 500 W
Washington, DC 20037
Telephone:  +1.202.639.6500
Facsimile:   +1.202.879.8939

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
crowmelissa@uclawsf.edu
1121 14th Street, N.W., Suite 200
Washington, DC 20005
Telephone: +1.202.355.4471
Facsimile: +1.415.581.8824

*Additional Attorneys for Plaintiffs Listed on Next Page*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AL OTRO LADO, INC., *et al.*, | Case No.: 3:23-cv-01367-AGS-BLM |
| Plaintiffs, | Hon. Andrew G. Schopler |
| v. | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| ALEJANDRO N. MAYORKAS, *et al.*, | |
| Defendants. | |

757398802.1

```
 1   MAYER BROWN LLP
     Michelle N. Webster (DC Bar No. 985265)
 2   (pro hac vice)
     Mwebster@mayerbrown.com
 3   1999 K Street, N.W.
     Washington, DC 20006
 4   Telephone:  +1.202.263.3000
     Facsimile:   +1.202.263.3300
 5   Matthew E. Fenn (NY Bar No. 5391149)
     (pro hac vice)
 6   Mfenn@mayerbrown.com
     71 S. Wacker Dr.
 7   Chicago, IL 60606
     Telephone: +1.312.782.0600
 8   Facsimile: +1.312.701.7711

 9
     VINSON & ELKINS LLP
10   Evan Miller (DC Bar No. 219310)
     (pro hac vice)
11   emiller@velaw.com
     Nataly Farag (DC Bar No. 90006516)
12   (pro hac vice)
     nfarag@velaw.com
13   Alex Rant (DC Bar No. 1780786)
     (pro hac vice)
14   arant@velaw.com
     Rami Abdallah E. Rashmawi (DC Bar No. 1780184)
15   (pro hac vice)
     rrashmawi@velaw.com
16   2200 Pennsylvania Ave., N.W., Ste. 500 W
     Washington, DC 20037
17   Telephone: +1.202.639.6500
     Facsimile: +1.202.879.8939
18

19   CENTER FOR CONSTITUTIONAL RIGHTS
     Baher Azmy (NY Bar No. 2860740)
20   (pro hac vice forthcoming)
     bazmy@ccrjustice.org
21   Angelo Guisado (NY Bar No. 5182688)
     (pro hac vice forthcoming)
22   aguisado@ccrjustice.org
     666 Broadway, 7th Floor
23   New York, NY 10012
     Telephone: +1.212.614.6464
24   Facsimile: +1.212.614.6499

25   AMERICAN IMMIGRATION COUNCIL
     Gianna Borroto (IL Bar No. 6305516)
26   (pro hac vice)
     gborroto@immcouncil.org
27   Katherine Melloy Goettel (IA Bar No. 53821)
     (pro hac vice)
28   kgoettel@immcouncil.org
```

Suchita Mathur (NY Bar No. 5373162)
(*pro hac vice*)
*smathur@immcouncil.org*
1331 G St. NW, Suite 200
Washington, DC 20005
Telephone: +1.202.507.7523
Facsimile: +1.202.742.5619

CENTER FOR GENDER & REFUGEE STUDIES
Neela Chakravartula (CA Bar No. 254746)
*neela@uclawsf.edu*
UC College of the Law, San Francisco
200 McAllister Street
San Francisco, CA 94102
Telephone: +1.415.565.4877
Facsimile: +1.415.581.8824

CENTER FOR GENDER & REFUGEE STUDIES
Robert Pauw (WA Bar No. 13613)
(*pro hac vice*)
*rpauw@ghp-law.net*
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
Telephone: +1.206.682.1080
Facsimile: +1.206.689.2270

## I. Introduction

Plaintiffs seek an injunction to remedy Defendants' failure to comply with their own Binding Guidance, which prohibits them from turning back noncitizens without CBP One appointments at ports of entry (POEs).[1] Defendants do not contest this self-imposed obligation to inspect and process such noncitizens; nor do they meaningfully contest that they have turned back individuals without appointments, depriving them of access to the U.S. asylum process and jeopardizing their safety. Therefore, an injunction ordering Defendants to comply with their Binding Guidance is appropriate under the *Accardi* doctrine.

## II. Plaintiffs have standing, and their claims are not moot.

Defendants' standing argument misunderstands the law and the posture of this case. Opp. 9. Standing is determined at the time a lawsuit is filed. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). A claim becomes moot only if the "personal interest that must exist at the commencement of the litigation" is no longer present. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). The Individual Plaintiffs' claims are not moot simply because they received a CBP One appointment; they are also "entitled to represent a class." *Id.* at 402. That claim remains live even if the underlying individual claim becomes moot. *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

Further, a claim in the pre-class certification context is not moot under the "inherently transitory" exception if (1) "the duration of the challenged action is too short to allow full litigation before it ceases," and (2) "it is certain that other persons similarly situated will have the same complaint." *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (cleaned up), *cert. denied*, 141 S. Ct. 2795 (2021). Individual Plaintiffs satisfy both conditions. First, they challenge Defendants' refusal to process asylum seekers who present at POEs without CBP One appointments. Many

---

[1] *See* ECF 50-3, ¶¶3-7; 50-4, ¶¶10-12; 50-5, ¶¶13-16; the November 1, 2021 Memo ("2021 Memo"), ECF 39-3; and the preamble to and structure of the Circumvention of Lawful Pathways Rule ("Asylum Rule").

proposed class members have to wait several months to obtain appointments through the app.[2] But even a period of several months is "too short" to permit full judicial review. *Belgau*, 975 F.3d at 949 (finding challenged action lasting one year too short). Second, other similarly situated individuals awaiting CBP One appointments already "have the same complaint," along with many others who will present at POEs without appointments in the future.

Moreover, where, as here, Defendants seek to strategically provide relief to class representatives, Dkt. 50-3 ¶19, courts employ the "relation back" doctrine to preserve named plaintiffs' interest in pursuing claims on behalf of a class where the claims are inherently transitory. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011). Defendants fail to satisfy their "heavy burden" to establish mootness. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 n.11 (9th Cir. 2013).

**III.        Plaintiffs have a cause of action under *Accardi*.**

Seeking to elevate form over substance, Defendants assert that the Complaint "does not identify any cause of action" for the *Accardi* claim, suggesting that Plaintiffs should be faulted for not specifically citing 5 U.S.C. § 706(2)(A), (D). Opp. 10. But Defendants concede that a cause of action exists under the Administrative Procedure Act ("APA"). *Id.*[3] And Defendants' own authority supports finding Plaintiffs' claim sufficient: in *Brown v. Haaland,* the court held that although plaintiffs pled their *Accardi* claim as based in due process, they could nevertheless proceed with the claim under the APA, which was cited elsewhere in the complaint. 2023 WL 5004358, at *4-5 (D. Nev. 2023). *See also Jefferson v. Harris*, 285 F. Supp. 3d 173, 185-86 (D.D.C. 2018) ("Regardless of whether Jefferson's *Accardi* claim fits

---

[2] *See, e.g.*, Dkt. 39-13 ¶¶23, 31 (asylum seekers waiting months for an appointment outside the Nogales POE); Dkt. 39-16 ¶50 (same in Tijuana); Dkt. 39-19 ¶¶4-5 (same in Reynosa and Matamoros); Dkt. 39-27 at 30-31 (families in northern Mexico reported waiting an average of two to four months for an appointment).
[3] While the Ninth Circuit has construed *Accardi* claims as based in administrative law, *see Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014), other courts have found them to be freestanding or rooted in due process. *See* Dkt. 39-1 at 13 n.8.

2

squarely under his due-process heading, the Court concludes that it is adequately pled at this stage in the proceedings."). Here, too, Plaintiffs have included APA allegations elsewhere in the complaint, Compl. ¶¶168, 181, 190, such that the Court can, if necessary, infer that Plaintiffs' *Accardi* claim falls under the APA. *See* Compl. ¶¶168, 181, 190.

Defendants have no support for the notion that failing to cite to the APA in certain paragraphs of the Complaint is fatal to Plaintiffs' *Accardi* claim. The 66-page complaint alleges detailed facts to put Defendants on notice, and Defendants point to no case that stands for the proposition that Rule 8's notice pleading is not met when a plaintiff pleads *facts* with specificity. *Compare Humboldt Baykeeper v. Simpson Timber Co.*, No. 06-cv-4188, 2006 WL 3545014, at *5 (N.D. Cal. Dec. 8, 2006) (refusing to dismiss for failure to identify element of cause of action where plaintiff alleged specific facts to put defendant on notice), *with Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (cited at Opp. 9) (facts alleged did not support the legal claim asserted).[4] The Complaint alleges, in detail, that "[u]nder elementary principles of administrative law, as well as fundamental fairness, agencies are required to follow their own policies," Compl. ¶159; that Defendants issued Binding Guidance requiring the processing of asylum seekers, which CBP has failed to follow, *id.* ¶¶160-62; that the CBP One Turnback Policy and each turnback constitute final agency action, *id.* ¶163; that Defendants turned back Plaintiffs and others, *id.* ¶162; and that Defendants' actions have harmed Plaintiffs, *id.* ¶¶164-66. Rule 8 requires no more. Fed. R. Civ. P. 8(a)(2). Because Defendants do not contend that they lack notice of the legal theory underlying plaintiffs' *Accardi* claim, their baselessly formalistic argument fails.

---

[4] *Salsman v. Access Sys. Americans, Inc.*, 2011 WL 1344246, at *3 (N.D. Cal. 2011), upon which Defendants also rely, is similarly inapposite, as in that case the plaintiff failed to identify which provision of the UCC, "a code containing hundreds of provisions," was allegedly violated, failing to provide adequate notice of the nature of the claims.

3

757398802.1

### IV. Plaintiffs' *Accardi* claim is judicially enforceable.

Plaintiffs' claim relies on CBP's Binding Guidance, which creates mandatory, public-facing procedures that benefit proposed class members. That policy has been articulated by Defendants in numerous places over the course of two years, affects asylum seekers' procedural rights, and is described by Defendants themselves as binding. *See* Dkt. 50-3, ¶3 (guidance "is binding on the field"); 50-4, ¶12 ("Under no circumstances will these individuals be turned away"); 50-5, ¶16 ("ports may not turn back undocumented noncitizens").

The *Accardi* doctrine reaches internal agency guidance that affects the rights of individuals. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (collecting cases). As Defendants acknowledge, courts may look to "various" sources to determine whether an agency policy is binding under *Accardi*. *Id.*; Opp. 15. Here, the Court need not look past Defendants' affirmation that the 2021 Memo is still in effect. *See, e.g.*, Dkt. 50-3, ¶¶3-7. This is unsurprising because the government similarly affirmed the 2021 Memo in the preamble to the Asylum Rule. And the rule itself presupposes an opportunity to present at a POE to claim an exception to the rule's rebuttable presumption. 8 C.F.R. §§ 208.33(a)(2)(ii)(B), 208.33(a)(3). Taken together, it is beyond doubt that Defendants have bound themselves by imposing "procedural rules benefitting" undocumented noncitizens without CBP One appointments. *Lopez v. FAA*, 318 F.3d 242, 247 (D.C. Cir. 2003).

Defendants' argument that the Binding Guidance merely constitutes a "general statement of policy" conflates Plaintiffs' *Accardi* claim with a claim that the Binding Guidance must be followed because it is a legislative rule issued through notice-and-comment rulemaking. Opp. 12-13. Thus, Defendants cite to cases discussing whether certain agency pronouncements constitute legislative rules or general statements of policy under the APA. *See United States v. Fifty-Three (53) Eclectus Parrots,* 685 F.2d 1131, 1136 (9th Cir. 1982) (rejecting argument that manual provision stating information about foreign laws "will be published" in Customs Bulletin constitutes

4

legislative rule); *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013-14 (9th Cir. 1987) (discussing requirements for notice-and-comment rulemaking in appeal based on agency's reliance on revised policy statement). But relevant Ninth and D.C. Circuit case law confirms that the pertinent inquiry is whether an agency's internal policy creates or affects individual rights or benefits, which the Binding Guidance clearly does. *See Alcaraz*, 384 F.3d at 1162; *Lopez v. FAA*, 318 F.3d at 247-48.[5]

Case law arising from analogous circumstances makes clear that the Binding Guidance "confers individual protections or privileges" and is thus enforceable by this Court. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336 (D.D.C. 2018) (ICE directive binding as it implicated minimum protections for asylum seekers seeking parole); *see also Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1020-21 (N.D. Cal 2019); *Torres v. U.S. Dep't of Homeland Sec.*, 2017 WL 4340385, at *5 (S.D. Cal. 2017). Defendants have cited nothing to the contrary.[6]

## V. Defendants have failed to follow their policy.

Defendants acknowledge that the Binding Guidance prohibits CBP from turning back undocumented noncitizens without appointments who seek asylum at POEs and do not dispute that Individual Plaintiffs and others were turned back. Dkt. 50 at 16-17. Those facts are sufficient to establish the basis for Plaintiffs' *Accardi* claim. There is no requirement under *Accardi* that Plaintiffs tie Defendants' unlawful conduct to a "policy." *See* Opp. 16. Notably, Defendants cite no case for that proposition. All that is required is the existence of binding guidance impacting individual rights and a failure to follow that guidance. *See, e.g., Brown v. Haaland*, 2023 WL 5004358, at *1, *4-5 (no allegation of policy to violate binding guidance).

---

[5] That the Binding Guidance does not provide a "definite or mandatory timeline" for processing asylum seekers, Opp. 13, is inapposite; it prohibits turnbacks of asylum seekers, and it is that right that Plaintiffs seek to enforce under the *Accardi* doctrine.
[6] The Ninth Circuit has rejected Defendants' assertion, Opp. 15-16, that individuals must show "substantial prejudice" before challenging an agency policy. *Montes-Lopez v. Holder*, 694 F.3d 1085, 1093–94 (9th Cir. 2012). In any event, the prejudice to Plaintiffs resulting from CBP's violation of the Binding Guidance is self-evident as discussed below in Section VII regarding irreparable harm.

Since Title 42 ended, despite contrary guidance from middle management, CBP officers began turning back noncitizens at POEs across the border and coordinating with INM to prevent asylum seekers from accessing POEs.[7] These were not isolated incidents; Plaintiffs submitted declarations from those who experienced and witnessed these turnbacks firsthand. Dkt. 39-14 ¶8 (San Ysidro CBP officer telling Elena Doe a CBP appointment was "the only way"); Dkt. 39-14 ¶10 (PedWest CBP officer telling Guadalupe Doe that CBP is only taking people with CBP One appointments); Dkt. 39-10 ¶14 (CBP officer telling Luisa Doe that seeking asylum is "only possible through CBP One"); Dkt. 39-29 ¶16 (turnback between Ciudad Juarez, Mexico and El Paso, Texas); Dkt. 39-22 ¶30 (reports of turnbacks in Tijuana, Reynosa, and Matamoros, Mexico); Dkt. 39-13 ¶¶10–12 (turnbacks at DeConcini and Nogales POEs in Arizona); Dkt. 39-27 at 7, 42, 45 (turnbacks in Tijuana, Nogales, and Ciudad Juarez, Mexico); Dkt. 39-29 ¶15 (CBP forcing disabled, ill, pregnant Venezuelan mother to wait 45 minutes in 100-degree heat on bridge between Ciudad Juarez and El Paso before telling her that port was at capacity).

The Defendants spill much ink arguing that there are a "substantial number" of individuals without CBP One appointments who are processed in accordance with their Binding Guidance. Dkt. 50 at 16-19. But that is irrelevant. Plaintiffs do not claim that Defendants *never* comply with their own guidance, but rather that they are violating that guidance by turning back a significant number of people without CBP One appointments. Defendants have made no showing to the contrary or contradicted any of Plaintiffs' evidence of turnbacks. Furthermore, based on CBP's public data, the actual number of people processed without CBP One appointments appears to be

---

[7] *See, e.g.*, Dkt. 39-4 at 2 (INM officials calling CBP port directors to confirm whether a particular asylum seeker could present at the POE; INM officials telling advocates that they are carrying out "CBP orders" when preventing asylum seekers from approaching the POE). *See also* Dkt. 39-21 ¶¶24, 25 (INM blocking access to the POE for asylum seekers without CBP One appointments).

about half the number that CBP cited in its brief. *See* Ex. 1, Decl. of Aaron Reichlin-Melnick.

Defendants' claim that some noncitizens are permitted to wait at POEs for processing also misses the point, because Plaintiffs' evidence shows Defendants often do not permit waiting at POEs. Dkt. 50-4 ¶12. When Luisa Doe attempted to present at the San Ysidro POE, a CBP officer threatened to call Mexican authorities to remove her if she did not leave.[8] *See* Dkt. 39-14 ¶4; Dkt. 39-16 ¶47. It is unreasonable to expect proposed class members to wait for processing when CBP officers do not give them that option. Defendants also assert that Mexican officials often prevent asylum seekers from reaching the limit line. *See* Dkt. 50-3 ¶15; Dkt. 50-4 ¶¶21–22. However, this argument is irrelevant because Plaintiffs have shown numerous instances of CBP officers directly turning back noncitizens in violation of Defendants' Binding Guidance.

Defendants' own evidence demonstrates a widespread pattern and practice of turning back noncitizens without CBP One appointments. They cite a May 2023 report, Dkt. 50 at 18, but the declaration from the report's co-author indicates that of the eight POEs where noncitizens can present using CBP One appointments, half *only* process noncitizens with CBP One appointments and "almost always" turn back those without CBP One appointments. Dkt. 39-26 ¶12. An August 2023 report submitted by Defendants also indicates that there were no walk-ups in three of these eight POEs: Laredo, Eagle Pass, and El Paso, Texas, Dkt. 48-8 at 6–8, and discusses turnbacks of two unaccompanied minors at the Nogales POE who were only later processed after a non-profit advocated on their behalf. *Id.* at 9.

**VI. Injunctive relief is available.**

Rule 65 grants district courts "broad powers and wide discretion to frame the scope of appropriate equitable relief when issuing a preliminary injunction to

---

[8] *See* Dkt. 39-15 (Audio tape: TJ POE (San Ysidro) 7.17.23 5pm (July 17, 2023) (on file with court)); *see also* Dkt. 39-14 ¶6 (describing the interaction).

7

757398802.1

preserve the status quo." *Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1248 (W.D. Wash. 2018) (cleaned up). An injunction requiring Defendants to follow their own Binding Guidance comports with *Accardi*. Defendants attempt to reframe Plaintiffs' claim as one for immediate inspection. Def. Opp. 19. But Plaintiffs only seek a remedy preventing rejections at POEs. As Defendants acknowledge, "CBP policy provides that in no instance will an individual be turned away or 'rejected' from a POE." 88 Fed. Reg. 31,314, 31,358. As Plaintiffs' evidence demonstrates, that is exactly what CBP is doing—turning back proposed class members, not simply asking them to wait in line. *See* Section V, *supra;* Dkt. 39-5 ¶¶9, 11; Dkt. 39-9 ¶¶16-17; Dkt. 39-12 ¶9.

*Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (2022), does not preclude this Court from issuing injunctive relief. An injunction requiring compliance with the Binding Guidance would not "interfere with the Government's efforts to operate" any of the statutes covered by § 1252(f)(1). *Id.* at 2065. Nowhere in the 2021 Memo or subsequent guidance do Defendants state that their internal policy is based on their interpretation of what § 1225 requires. *See* Dkt. 39-3. Indeed, the only legal authority cited in the 2021 Memo is an Executive Order issued in 2021, which makes no mention of any obligations under the INA and instead announces a "multi-pronged approach toward managing migration . . . that reflects the Nation's highest values." *Id.* at 3; 86 Fed. Reg. 8267 (Feb. 5, 2021). Defendants' basis for adopting their policy was to "increase capacity to process undocumented noncitizens at Southwest Border POEs" to "incentivize an alternative" to unlawful crossing between POEs. Dkt. 39-3 at 2. The Binding Guidance is in no way tethered to Defendants' efforts to "carry out" any statutory obligation. *Aleman Gonzalez*, 142 S. Ct. at 2065.

Moreover, courts applying *Aleman Gonzalez* have found that § 1252(f)(1) does not apply where a challenged rule has only a "collateral effect" on the operation of a covered provision. *See E. Bay Sanctuary Covenant v. Biden*, 2023 WL 4729278, at *8 (N.D. Cal. 2023); *Al Otro Lado v. Mayorkas*, 2022 WL 3142610, at *23 (C.D.

8

757398802.1

Cal. 2022). Here, any impact that an injunction requiring Defendants not to deviate from their Binding Guidance has on their efforts to implement § 1225 is "one step removed" from the requested relief and thus does not implicate § 1252(f)(1). *Gonzalez v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007); *see also Aleman Gonzalez*, 142 S. Ct. at 2067 n.4.

Should this Court determine that CBP's policy is tied to § 1225, *see* Opp. 21-22, there is nonetheless a crucial distinction between the injunction Plaintiffs seek and the one prohibited by *Aleman Gonzalez*, which "require[d] officials to take actions that [they believe] are not required by [statute], and to refrain from actions that [they believe] *are* allowed by [statute]." *Id.* at 2065 (emphasis added). Here, Plaintiffs seek an injunction requiring Defendants to take actions that they concede *are required* and to refrain from taking actions that they believe *are not allowed*.

## VII. Plaintiffs have established irreparable injury.

Although the named plaintiffs have now been inspected and processed, irreparable injury persists because they seek to represent a class of similarly situated individuals whom Defendants have denied access to the U.S. asylum process. These proposed class members wait in perilous conditions in Mexican border towns because Defendants are violating their own Binding Guidance. Though Defendants state that proposed class members will not be "permanently denied" inspection and processing, every passing day brings a risk of kidnapping, rape, assault, or death in Mexico.[9] Dkt. 50 at 23; *see* Dkt. 39-1 at 8-12; *Al Otro Lado v. Mayorkas*, 619 F. Supp. 3d at 1040-41 (threat of physical danger and harm to asylum seekers turned back at POEs constitutes irreparable injury). Moreover, asylum seekers waiting in border cities risk deportation to their countries of persecution under a new agreement between the

---

[9] In fact, there is no guarantee that waiting asylum seekers will ever get CBP One appointments, in which case their injury would persist indefinitely. *See supra* note 2.

United States and Mexico.[10] And processing some subset of asylum seekers without CBP One appointments does not negate the irreparable harm that proposed class members will suffer without an injunction.

Even proposed class members who can navigate CBP One must often wait months for an appointment in dangerous conditions. During the three months that Plaintiff Isabel Doe waited for an appointment and was repeatedly turned back at the San Ysidro POE, her husband was murdered in Tijuana and her stepchildren were stabbed by cartel members. Dkt. 39-24 ¶¶12-14, 17-22, 25, 29. Such tragedies could be avoided if Defendants complied with their own guidance.[11] The evidence is clear that asylum seekers will continue to suffer irreparable harm absent an injunction.

**VIII. Both the equities and the public interest favor preliminary relief.**

Plaintiffs seek only an injunction requiring Defendants to follow *their own Binding Guidance*. Defendants mischaracterize the relief Plaintiffs seek and proffer meritless objections about interference with CBP's operations. Opp. 24-25. Ordering Defendants to comply with their own guidance—with which they repeatedly state CBP is already in compliance—"can pose no harm to them." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 156 (D.D.C. 2018); *see also* Dkt. 39-1 at 24-25. Thus, the balance of the equities and the public interest strongly favor granting preliminary injunctive relief to Plaintiffs.

---

[10] *See* Rosa Flores, *et al.*, CNN, Sept. 24, 2023, *Mexico Makes Agreement With US to Deport Migrants from its Border Cities as One Mayor Warns His City Is at 'A Breaking Point,'* https://www.cnn.com/2023/09/23/us/mexico-us-border-patrol-agreement-migration-surge/index.html.

[11] Defendants argue a lack of causal connection between the harm to Plaintiffs and the activity to be enjoined. Dkt. 50 at 24. But the requested injunction would remedy the harm to proposed class members by giving them access to the U.S. asylum process. This would allow class members to escape from life-threatening conditions in Mexico. Presently, there is no guarantee that asylum seekers turned back from POEs will ever have a chance to access the U.S. asylum process, nor that every individual requesting a CBP One appointment will receive one. Defendants' cases are inapposite. *See, e.g., Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011) (plaintiff failed to show harm from Google's competition where company did not submit statements from *any* subscribers showing they stopped using the company's services because of Google).

10

757398802.1

Dated: September 29, 2023.

      MAYER BROWN LLP
         Matthew H. Marmolejo
         Ori Lev
         Michelle N. Webster
         Matthew E. Fenn

      VINSON & ELKINS LLP
         Stephen M. Medlock
         Evan Miller
         Nataly Farag
         Alex Rant
         Rami Abdallah E. Rashmawi

      CENTER FOR GENDER AND REFUGEE STUDIES
         Melissa Crow
         Neela Chakravartula
         Robert Pauw

      CENTER FOR CONSTITUTIONAL RIGHTS
         Baher Azmy*
         Angelo Guisado*

      AMERICAN IMMIGRATION COUNCIL
         Katherine Melloy Goettel
         Gianna Borroto
         Suchita Mathur

By: */s/ Ori Lev*_____
        Ori Lev

*Attorneys for Plaintiffs*

\* Pro Hac Vice motion forthcoming.