BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
EREZ REUVENI
Counsel
SAMUEL P. GO
Assistant Director
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
JASON WISECUP
Trial Attorney

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:23-cv-01367-AGS-BLM |
| *Plaintiffs*, | Hon. Andrew G. Schopler |
| v. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT** |
| ALEJANDRO N. MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | Hearing Date: [None set] |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .................................................................................1

I.     The Individual Plaintiffs' Claims Are Moot. ............................................1

II.    The Organizational Plaintiffs Lack Injury Traceable to the Challenged "Policy" and Are Not Within the Zone of Interests of the INA. .................................................................................2

III.   Plaintiffs' Claimed Injuries Are Not Redressable. ...................................5

IV.    Plaintiffs Have Not Stated a Claim Under *Accardi* ...................................7

V.     Plaintiffs' APA Claims Fail at the Threshold. ...........................................8

       A.     The Complaint Does Not Identify a Discrete or Final Agency Action. ............................................................9

       B.     Managing Intake at POEs Is Committed to Agency Discretion. ...............................................................12

       C.     At Minimum, the Court Should Dismiss Plaintiffs' APA Challenges to the Conduct of Mexican Officials. ..........................15

V.     The Cited Statutes Do Not Extend Beyond the U.S. Territory. ...............16

VI.    Plaintiffs Cannot State a Due Process Claim. ........................................19

VII.   Plaintiffs Cannot State a Claim under the Alien Tort Statute. .................20

CONCLUSION ..................................................................................20

# TABLE OF AUTHORITIES

*Al Otro Lado, Inc. v. Mayorkas*,
   No. 3:17-cv-2366, 2021 WL 3931890 (S.D. Cal. Sept. 2, 2021)....... 9, 12, 20

*Am. Farm Lines v. Black Ball Freight Serv.*,
   397 U.S. 532 (1970)...................................................................................7

*Bennett v. Spear*,
   520 U.S. 154 (1997).................................................................................10

*Biden v. Texas*,
   142 S. Ct. 2528 (2022).............................................................................11

*Brach v. Newsom*,
   38 F.4th 6 (9th Cir. 2022) ..........................................................................2

*Brnovich v. Biden*,
   630 F. Supp. 3d 1157 (D. Ariz. 2022) .....................................................11

*California v. United States*,
   104 F.3d 1086 (9th Cir. 1997) .................................................................13

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983).....................................................................................1

*Dellums v. U.S. Nuclear Regul. Comm'n*,
   863 F.2d 968 (D.C. Cir. 1988)..................................................................15

*DHS v. Thuraissigiam*,
   140 S. Ct. 1959 (2020)....................................................................... 16, 19

*Gomez-Velazco v. Sessions*,
   879 F.3d 989 (9th Cir. 2018) .....................................................................8

*Guidiville v. Band of Pomo Indians v. NGV Gaming, Ltd.*,
   531 F.3d 767 (9th Cir. 2008) ...................................................................17

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .................................................................................12

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
    510 U.S. 1301 (1993) .................................................................................5

*Janjua v. Neufeld*,
    933 F.3d 1061 (9th Cir. 2019) ................................................................12

*Jennings v. Rodriguez*,
    138 S.Ct. 830 (2018) ...............................................................................7

*Jesner v. Arab Bank, PLC*,
    138 S. Ct. 1386 (2018) ...........................................................................20

*Los Angeles Cnty. v. Davis*,
    440 U.S. 625 (1979) .................................................................................1

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................5

*McBride Cotton & Cattle Corp. v. Veneman*,
    290 F.3d 973 (9th Cir. 2002) ...................................................................1

*Mendoza-Linares v. Garland*,
    51 F.4th 1146 (9th Cir. 2022) ................................................................19

*Montes-Lopez v. Holder*,
    694 F.3d 1085 (2012) ..............................................................................8

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)...............................................................................18

*Norton v. SW Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ..................................................................................9

*Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*,
    746 F.3d 1119 (9th Cir. 2014) .................................................................7

*Reno v. AADC*,
    525 U.S. 471 (1999).......................................................................... 3, 13

iii

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ...................................................................6

*Sale v. Haitian Centers Council, Inc.*
    509 U.S. 155 (1993).....................................................................................18

*Sierra Club v. Whitman*,
    268 F.3d 898 (9th Cir. 2001) ....................................................................13

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004)....................................................................................20

*SPLC v. DHS*,
    No. 18-cv-0760, 2023 WL 2564119, at *4 (D.D.C. Mar. 15, 2023) .........11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).......................................................................................4

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984).................................................................................. 3, 14

*Torres v. Barr*,
    976 F.3d 918 (9th Cir. 2020) ....................................................................16

*Town of Castle Rock, Colo. v. Gonzales*,
    545 U.S. 748 (2005)....................................................................................13

*Underhill v. Hernandez*,
    168 U.S. 250 (1897)....................................................................................15

*United States v. Gambino-Ruiz*,
    --- F.4th ----, 2024 WL 256480 (9th Cir. Jan. 24, 2024)...............................18

*United States v. Jackson*,
    480 F.3d 1014 (9th Cir. 2007) ...................................................................17

*United States v. Texas*,
    599 U.S. 670 (2023)................................................................. 2, 3, 5, 14

*W. State Univ. of S. California v. Am. Bar Ass'n*,
    301 F. Supp. 2d 1129 (C.D. Cal. 2004) ........................................................15

*WesternGeco LLC v. ION Geophysical Corp.*,
    138 S. Ct. 2129 (2018) .................................................................................19

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ............................................................................9

## **STATUTES**

5 U.S.C. § 702 ........................................................................................................15

5 U.S.C. § 704 ........................................................................................................15

5 U.S.C. § 706(1) .......................................................................................... 9, 10, 12

5 U.S.C. § 706(2) ...............................................................................................6, 9

6 U.S.C. § 111(b)(1)(E) ..........................................................................................14

6 U.S.C. § 211(g)(3)(B) ..........................................................................................14

6 U.S.C. § 211(g)(3)(D) ..........................................................................................15

8 U.S.C. § 1158(a) ........................................................................................... 14, 19

8 U.S.C. § 1158(a)(1) ....................................................................................... 16, 17

8 U.S.C. § 1158(a)(2)(C) ..........................................................................................2

8 U.S.C. § 1158(a)(2)(D) ..........................................................................................2

8 U.S.C. § 1158(d)(4) ................................................................................................4

8 U.S.C. § 1158(d)(7) ................................................................................................5

8 U.S.C. § 1225 ........................................................................................................3

8 U.S.C. § 1225(a)(1) ................................................................................ 13, 16, 18

8 U.S.C. § 1225(a)(3) ........................................................................ 13, 14

8 U.S.C. § 1225(b)(1) .............................................................................13

8 U.S.C. § 1225(b)(1)(A)(ii) ...................................................................14

8 U.S.C. § 1225(b)(2) .............................................................................14

8 U.S.C. § 1225(2) ..................................................................................13

8 U.S.C. § 1252(f)(1) ...........................................................................1, 5

8 U.S.C. § 1443(h) ...................................................................................5

28 U.S.C. § 1350 ....................................................................................20

Pub. L. No. 99-603 § 1(b) ........................................................................5

## **REGULATIONS**

8 C.F.R. § 1.2 .........................................................................................18

8 C.F.R. § 1001.1(q) ..............................................................................18

62 Fed. Reg. 10312 ................................................................................18

63 Fed. Reg. 19382 ................................................................................18

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 23(b)(2)........................................................................2, 6

# INTRODUCTION

To avoid statutory limits on classwide injunctive relief, Plaintiffs allege that a borderwide "policy" can be inferred from factual allegations that reflect differing practices and encounters at different ports of entry (POEs). Plaintiffs are incorrect, and their Complaint should be dismissed for lack of jurisdiction and failure to state a claim. Plaintiffs' opposition reinforces that they lack a cognizable or ongoing injury and that the alleged injuries to the Organizational Plaintiffs and putative class cannot be redressed. Injunctive relief is limited by 8 U.S.C. § 1252(f)(1), and vacatur of the purported "policy" would not constrain the management of intake at POEs. Further, the Complaint fails to state a claim under the *Accardi* doctrine, the APA, the Due Process Clause, and the Alien Tort Statute.

# ARGUMENT

## I.   The Individual Plaintiffs' Claims Are Moot.

Plaintiffs acknowledge that the Individual Plaintiffs have all been inspected and processed. Pls.' Opp. (ECF 72) ("Opp.") 11. They also acknowledge that the injury Plaintiffs assert is denial of "access to the asylum process," which they define as inspection and processing. Opp. 11; Compl. ¶ 34. They nonetheless argue that the Individual Plaintiffs' claims are not moot because they were harmed in the past by being turned back. Opp. 10-11. Yet the Individual Plaintiffs are not claiming to seek any retrospective relief to address this alleged past harm, and, unlike in *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 982 (9th Cir. 2002) (cited at Opp. 11), they are not currently or prospectively subject to the alleged "turnback policy" because they have entered the United States. They have no ongoing interest in challenging the so-called "CBP One Turnback Policy" because there is no further effective relief the Court can grant them. *See Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–04 (1983) (explaining that past harm does not establish a case or controversy for injunctive relief; plaintiffs must show they will likely be subject to the same conduct again).

Nor does an exception to mootness apply. *First*, Defendants have already shown that it is not reasonable to expect that the "allegedly wrongful behavior" would recur with respect to these Plaintiffs, Opp. 9, because it is undisputed that they have received the remedy for their claimed injury. Plaintiffs offer only speculation that the Individual Plaintiffs may be subject to the alleged conduct in the future. But "[t]he test is reasonable expectation, not ironclad assurance." *Brach v. Newsom*, 38 F.4th 6, 15 (9th Cir. 2022). Plaintiffs have not argued or shown that the Individual Plaintiffs have since been removed and seek to return to the United States across the Southwest border at a POE without a CBP One appointment. *See* Opp. 9 n.1. And if Plaintiffs are denied asylum and ordered removed, it seems unlikely that they would seek to return, as they would then be subject to the bar on subsequent asylum applications (absent materially changed circumstances). 8 U.S.C. § 1158(a)(2)(C)-(D). *Second*, the mootness exception that applies to "inherently transitory" claims brought on behalf of a class (*see* Opp. 9–10) should not apply because the Complaint's allegations do not plausibly allege a discrete policy or practice that applies in the same way to the entire class, which defeats Plaintiffs' assertion that class treatment is appropriate. *See* Defs.' Mem. in Support of Mot. to Dismiss (ECF 68-1) ("Mot.") 12, 22-23; *infra* 10–11; Fed. R. Civ. P. 23(b)(2). If the Court nonetheless determines that this exception applies, the Individual Plaintiffs' claims must be dismissed when class certification is denied.

## II.   The Organizational Plaintiffs Lack Injury Traceable to the Challenged "Policy" and Are Not Within the Zone of Interests of the INA.

The Organizational Plaintiffs lack injury from the claimed "CBP One Turnback Policy" for the same reason the plaintiff States in *United States v. Texas*, 599 U.S. 670 (2023), lacked injury—they have no cognizable interest in the enforcement of the immigration statutes. Mot. 14–15. Contrary to Plaintiffs' arguments, the *Texas* decision is not only about whether a State may sue to compel arrest or prosecutions. It stands for the broader principle that third parties—whether individuals, States, or

non-governmental organizations—lack a "judicially cognizable interest" in whether or how the Executive exercises its immigration enforcement discretion against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984), *cited in Texas*, 599 U.S. at 677. Each of the reasons the Supreme Court articulated in *Texas* to support its conclusion that the States lacked standing to challenge immigration enforcement guidelines—including that discretionary immigration enforcement decisions relating to third parties involve no exercise of coercive power over the plaintiff; that challenges to those decisions implicate Article II and foreign-policy concerns[1]; and that courts lack "meaningful standards" to assess such decisions, *see Texas*, 599 U.S. at 678–81—applies here. *See* Mot. 14–15, 25–27; *infra* § V. Moreover, just as in *Texas*, Plaintiffs here seek to compel the Executive to exercise immigration enforcement functions.  Although they argue they are not seeking to compel Defendants to "arrest and prosecute," Opp. 16, they are seeking to compel them to inspect and process noncitizens under 8 U.S.C. § 1225 for expedited removal or removal proceedings, so the noncitizens can assert asylum claims. *See, e.g.*, Compl. ¶¶ 34, 170, 172, 193–95, 202. That is, they are seeking to compel the government to enforce immigration law in their preferred way by "plac[ing] people in removal proceedings." *See* Opp. 34 (citing *Reno v. AADC*, 525 U.S. 471, 488–91 (1999), for the proposition that placing noncitizens in removal proceedings is "tied to law enforcement"). Inspection and processing for removal proceedings are immigration enforcement actions subject to prosecutorial discretion principles, *see Reno*, 525 U.S. at 483–84, much like the arrest and prosecution of those who were previously admitted to or entered the United States. *See infra* § V(B). *Texas* thus controls, and the Organizational Plaintiffs lack a cognizable injury regardless of their claimed mission-

---

[1] The foreign-policy objectives underlying the CLP Rule's incentives to use appointments are relevant here. *See* Opp. 17 n.6. To the extent Plaintiffs seek through this lawsuit to impose inflexible timelines on the inspection and processing of those without appointments, such relief would undermine those objectives.

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

1  frustration and resource-diversion injuries.

2        In any event, the Organizational Plaintiffs have not sufficiently alleged that

3  their claimed injuries are attributable to the particular practice they challenge in this

4  litigation—the claimed practice whereby CBP officers (or Mexican authorities who,

5  "upon information and belief, are acting at the behest of CBP") are "turn[ing] back"

6  noncitizens who do not have CBP One appointments. *See* Compl. ¶ 5. At the plead-

7  ing stage, "the plaintiff must clearly allege facts demonstrating each element" of

8  standing, including that their injury is fairly traceable to the challenged conduct.

9  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). Here, the Complaint

10  does not allege specific facts to show that the Organizations' increased costs were

11  "incurred to assist migrants turned back" or "incurred because people are turned

12  back and told to use CBP One in order to access the asylum process." *See* Opp. 17;

13  *see also* Compl. ¶¶ 141 (does not allege that the claimed costs—allegedly incurred

14  beginning in January 2023, before the claimed practice started—were incurred to

15  assist those who were turned back), 149 (referring only to costs to meet needs of

16  "migrants at the southern border"). At most, the Complaint conclusorily alleges that

17  the purported "CBP One Turnback Policy" gives rise to increased costs, but it does

18  not clearly and specifically allege that these costs are incurred to assist those who

19  have been expressly subjected to the alleged "policy." This failure is notable, given

20  that the alleged costs are plausibly attributable to larger numbers of noncitizens seek-

21  ing to enter at POEs than can be accommodated without wait times, rather than to a

22  policy of turning back those without appointments.

23        Even if they had Article III standing, the Organizational Plaintiffs' claims

24  should be dismissed because they are not within the zone of interests of the relevant

25  immigration statutes. Although the asylum statute provides that noncitizens be ad-

26  vised "*at the time they file* an application for asylum" that they are permitted to ob-

27  tain legal representation and given information about pro bono legal services pro-

28  viders, *see* 8 U.S.C. § 1158(d)(4) (cited at Opp. 18) (emphasis added), the statute

4

does not evince concern with services to noncitizens who are not yet in the United States (*see also infra* § V) and not yet in proceedings, nor with the interests of legal services providers seeking to assist noncitizens abroad.[2] To the contrary, the asylum statute affirmatively states that it shall not "be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers." 8 U.S.C. § 1158(d)(7). And the Supreme Court's *Texas* decision reinforces that the Organizational Plaintiffs are not within the zone of interests, as non-regulated parties have no general cognizable interest in how the INA is enforced against others. *See supra* 3-4.[3]

## III.    Plaintiffs' Claimed Injuries Are Not Redressable.

The Individual Plaintiffs have no ongoing stake in the controversy, and an injunction is not available to the putative class or the Organizational Plaintiffs. Accordingly, Plaintiffs' alleged injuries cannot be redressed by court order.

Under 8 U.S.C. § 1252(f)(1), Plaintiffs cannot obtain classwide or other broader injunctive relief compelling agency action under § 1225 or prohibiting "turnbacks." Mot. 12–13, 16. The fact that the Supreme Court retains authority to issue a classwide injunction under § 1252(f)(1) is immaterial. *See* Opp. 12–13 n.4. To demonstrate standing, Plaintiffs must show that they have standing as of the filing of the Complaint and that a favorable decision is "'likely' to provide effectual relief." *Texas*, 599 U.S. at 692 (Gorsuch, J., concurring in judgment) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At this time, it is at most speculative that Plaintiffs' claims will reach the Supreme Court. *See id.*

---

[2] 8 U.S.C. § 1443(h), contained in the subchapter of the INA on citizenship, authorizes organizations to receive funds to provide information about naturalization, and has no bearing on the Organizational Plaintiffs' claimed interests. *See* Opp. 18.

[3] Although Justice O'Connor's decision in *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1302 (1993), was about legalization provisions of the INA enacted through the Immigration Reform and Control Act (IRCA), Pub. L. No. 99-603 § 1(b), 100 Stat. 3359 (Nov. 6, 1986), Plaintiffs provide no substantive reason the zone-of-interests analysis here should differ. *See* Opp. 18.

Plaintiffs argue their claimed injuries are redressable because they can obtain vacatur of the so-called "CBP One Turnback Policy." Opp. 14. Essentially, Plaintiffs are seeking to avoid § 1252(f)(1)'s limits on injunctive relief by inventing a "policy" of "turnbacks" that can then purportedly be "set aside" or vacated under the APA, 5 U.S.C. § 706(2). *See* Opp. 14. The Complaint's allegations do not support the existence of a cohesive, discrete policy that could be reviewed or set aside under § 706(2). *See infra* § V(A). Nor do Plaintiffs explain how the Court can effectively vacate or set aside a "pattern or practice" under § 706(2) without ordering classwide injunctive relief restraining the underlying conduct. *See* Opp. 12 n.4. In this context, a court order that merely vacates the "policy" but does not also enjoin or restrain governmental conduct would have no effect and cannot redress Plaintiffs' harms. Indeed, vacatur of this alleged unwritten "policy" or "practice" does not restrain the government's exercise of its discretion to manage intake at POEs on a daily basis. *See* Mot. 25–27; *infra* § V(B). Vacatur thus cannot redress Plaintiffs' alleged harms.

Finally, declaratory relief directed at an alleged "policy" similarly cannot provide an effective classwide remedy here because the declaratory relief may not enjoin or restrain Defendants' actions as to covered immigration processing statutes without running afoul of § 1252(f)(1). Mot. 13. And Federal Rule of Civil Procedure 23(b)(2) does not support class certification where there is no possibility of injunctive relief. *Id.* The Advisory Committee note to the Rule defines "corresponding declaratory relief" as set forth in that Rule as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment. Thus, the declaratory relief contemplated by Rule 23(b)(2) is equivalent to an injunction. Although the Ninth Circuit held in 2010 that § 1252(f)(1) does not bar declaratory relief, *see Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) (cited at Opp. 13), it has not addressed whether Rule 23(b)(2) permits declaratory relief where there is no "corresponding" injunctive relief, which is the question on which the Supreme Court later

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

1  remanded that case. *Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018).

2  **IV.   Plaintiffs Have Not Stated a Claim Under *Accardi*.**

3        Plaintiffs have also failed to state a claim under each of the legal theories as-

4  serted in the Complaint. Plaintiffs' First Claim for Relief—for Defendants' alleged

5  failure to follow CBP's November 2021 Guidance—should be dismissed because it

6  does not identify a cause of action and because the facts alleged do not support the

7  elements of an *Accardi*-based claim.

8        The November 2021 Guidance does not supply the type of procedural right

9  that courts view as enforceable under the *Accardi* doctrine.[4] Regardless of whether

10 the Guidance is binding on CBP's officers, *see* Opp. 20, the overall purpose and

11 character of the Guidance is to instruct officers as to how to manage processing at

12 POEs. *See* Mot. Ex. 1, at 1. The memorandum guides CBP discretionary conduct

13 and is not "intended primarily to confer important procedural benefits upon individ-

14 uals." *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970).

15 Although some parts of the guidance address CBP officers' conduct with respect to

16 noncitizens waiting to be processed, *see* Opp. 20-21, the Guidance's focus is on in-

17 ternal operational concerns to achieve orderly processing to the agency's benefit.

18       Moreover, the Complaint does not allege the type of prejudice required to state

19 an *Accardi* claim. Despite previously conceding in their Preliminary Injunction Mo-

20 tion that prejudice is required to state a claim, *see* ECF 38 at 14, Plaintiffs now argue

21 that they are not required to plead prejudice in their administrative proceedings, re-

22 lying on *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012), *see* Opp. 22. But

23 *Montes-Lopez* is not applicable, as that case narrowly held that "an alien who shows

24 that he has been denied the statutory right to be represented by counsel in an

25  _____

26 [4] Plaintiffs appear to clarify in their Opposition that they are only seeking to enforce
   that Guidance, not the preamble to the CLP Rule or its structure. Opp. 20 n.10. Even

27 without that concession, the agency's statements in the preamble to the CLP Rule
   are not legally binding. *See* Mot. 20 (citing *Peabody Coal Co. v. Dir., Off. of Work-*

28 *ers' Comp. Programs*, 746 F.3d 1119, 1125 (9th Cir. 2014)).

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

immigration proceeding need not also show that he was prejudiced by the absence of the attorney." *Id.* at 1093–94. This is "an exception to the general rule requiring a showing of prejudice," *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018). The holding is thus limited to the context of denial of the statutory and regulatory right to counsel in adversarial removal proceedings, which the Ninth Circuit determined to be a "violation[] that [is] serious enough to be reversible without a showing of error" because it involved a "right too fundamental and absolute" to require difficult calculations of prejudice where the denial of counsel "fundamentally affects the whole of a proceeding." *Montes-Lopez*, 694 F.3d at 1091, 1093. This reasoning does not apply to the claimed violation here: a violation of procedures at POEs as to the intake of and interactions with undocumented noncitizens. Plaintiffs' *Accardi* claim is not based on any fundamental right. Plaintiffs must, therefore, allege prejudice to the outcome of their administrative proceeding as a result of the alleged violation. Mot. 21. Plaintiffs claim that the prejudice is the "turnback" itself, characterizing the "turnback" as the outcome of the relevant proceeding. *See* Opp. 22. But the *Accardi* prejudice inquiry requires more than a showing of a failure to follow agency procedures, Mot. 21, and Plaintiffs cannot redefine the prejudice inquiry by framing the administrative proceeding as the alleged violation.

For these reasons, the Court should dismiss the First Claim for Relief. At a minimum, Plaintiffs would have to amend their Complaint to expressly bring their *Accardi*-based claim under the APA, *see* Mot. 19, but any such amendment would be futile because, as discussed next, Plaintiffs cannot meet the threshold requirements to state an APA claim.

## V.    Plaintiffs' APA Claims Fail at the Threshold.

Plaintiffs' Claims for Relief under the APA, 5 U.S.C. §§ 706(1) and 706(2), should also be dismissed for lack of discrete and final agency action and because CBP's management of POEs is committed to agency discretion. *See* Mot. 21–27.

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

**A. The Complaint Does Not Identify a Discrete or Final Agency Action.**

<u>Plaintiffs' § 706(1) Claim Requires Final and Discrete Agency Action</u>. Contrary to their arguments, Plaintiffs must identify a discrete "final agency action" to proceed on their Fourth Claim for Relief for withholding of agency action under 5 U.S.C. § 706(1). *See* Opp. 23–25. Here, Plaintiffs' § 706(1) claim essentially challenges a policy or practice of withholding of agency action. As such, the Complaint must sufficiently allege the existence of a discrete policy or practice. The *AOL I* court reasoned that, for purposes of a claim of agency failure to act under 5 U.S.C. § 706(1), the discrete action that must be identified is the duty that is allegedly withheld. *See Al Otro Lado, Inc. v. Mayorkas*, No. 3:17-cv-2366, 2021 WL 3931890, at *9 (S.D. Cal. Sept. 2, 2021) ("*AOL I*"). Yet the APA does not permit "'broad programmatic attack[s], whether couched as a challenge to an agency's action or 'failure to act.'" *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021) (quoting *Norton v. SW Utah Wilderness Alliance*, 542 U.S. 55, 64–65 (2004)). Regardless, merely identifying the duty that has been withheld is insufficient here. As the *AOL I* court acknowledged, there is often overlap between the requirements of § 706(1) and § 706(2) of the APA. *Id.* at *18 n.16. Section 706(1) provides that a court may compel agency action "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and § 706(2) allows a court to "hold unlawful and set aside agency action" found to be, *inter alia*, arbitrary, capricious, contrary to constitutional right, in excess of statutory authority, or without observance of procedure required by law, 5 U.S.C. § 706(2). Here, where Plaintiffs allege that the withholding or delay of agency action is pursuant to a "policy," Compl. ¶ 192, and where the relief they seek is to "set aside," "enjoin," and declare unlawful that "policy," *id.* Prayer for Relief ¶¶ C–E, Plaintiffs are challenging that policy or practice. In order for a court to be able to evaluate a policy under the APA, that alleged "policy" must meet § 706(2)'s requirement of a discrete and final agency action. As discussed next, Plaintiffs do not plead facts sufficient to satisfy that requirement.

<u>The alleged "CBP One Turnback Policy" Does Not Constitute Discrete or Final Agency Action.</u> Plaintiffs' opposition concedes that their § 706(2) claims in their First, Second and Third Claims for Relief are premised on the purported "borderwide" "CBP One Turnback Policy." Opp. 26.[5] Yet, notwithstanding the policy label Plaintiffs themselves supply, their Complaint does not adequately allege facts that support the existence of a discrete or final agency action that can be evaluated under the APA. Mot. 22–23.

Plaintiffs argue their Complaint plausibly alleges the existence of a policy by alleging facts that they claim demonstrate "effects consistent with the alleged policy." Opp. 27, 28. Yet the allegations as a whole belie the existence of a "turnback policy" that is either discrete or final. First, they acknowledge that CBP's stated policy is not to turn back undocumented noncitizens who lack CBP One appointments. Compl. ¶ 160; Opp. 26. Second, the allegations demonstrating that undocumented noncitizens at the Nogales POE wait in line to be processed and are not turned back negates a finding that CBP has implemented a broad borderwide policy to turn back noncitizens without appointments. *See* Compl. ¶ 113. Third, the varying and changing nature of the alleged encounters with CBP Officers defeats any inference that there is a cohesive and final policy or practice that marks the "consummation of the agency's decision making process." *Bennett v. Spear*, 520 U.S. 154, 177 (1997); *see* Mot. 23. For example, Plaintiffs Somar and Guadalupe Doe allege that the first time they approached the border at the San Ysidro POE in June 2023, a CBP Officer told them they could wait in line, but they declined to do so because the line was taking too long. *See* Compl. ¶ 20. Somar and Guadalupe Doe allege that the next time they approached the POE, a CBP officer made suggestions as to how to use CBP One and, in response to questions about an "emergency list," directed them to speak to

---

[5] Plaintiffs' reference to their "§ 706(2) claim" presumably refers to their First, Second, and Third Claims for Relief. As they have not properly pleaded their First Claim for Relief as an APA claim, however, they have not specified the basis for that claim.

Mexican immigration officials at a different entrance to the POE. *Id.* ¶ 21.

These allegations do not sufficiently reflect a cohesiveness among the various encounters across all field offices (or even within one field office) to suggest the existence of an overarching, discrete "turnback policy" that could justify proceeding with these claims. *See* Mot. 22–23; *see also SPLC v. DHS*, No. 18-cv-0760, 2023 WL 2564119, at *4 (D.D.C. Mar. 15, 2023). Even assuming there are periodic encounters in which a CBP officer tells a noncitizen who has approached the border at a POE that "they must have a CBP One appointment in order to be inspected and processed," *see* Opp. 26 (defining "turnback"), such individual encounters do not constitute a discrete policy. The inquiry is not whether there are allegations that would, if true, support a finding of individual turnbacks. It is whether these allegations plausibly allege a discrete policy that is capable of being reviewed by a court under the APA. Here, the answer to that inquiry is no—Plaintiffs merely amalgamate unrelated individual encounters occurring in some locations but not others without identifying any cohesive single policy responsible for those decisions. Recognizing such a claim would contravene Supreme Court precedent. *Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) (federal courts may not "postulat[e] the existence of an agency decision wholly apart from any agency statement . . . designed to implement that decision."); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1172 (D. Ariz. 2022) (courts cannot "review broad, generalized agency policies in the abstract" or "separate an agency's decision from the statement intended to implement that decision"). And as the allegations do not give rise to an inference that there is even a discrete "CBP One Turnback Policy," the Court cannot determine that the so-called Policy represents "final agency action." For these reasons, Plaintiffs' APA claims premised on a "Turnback Policy" must be dismissed.

<u>Individual Turnbacks are not Final Agency Actions.</u> Nor is "each individual turnback" a "final agency action" for purposes of APA review. *See* Mot. 24–25. Even accepting Plaintiffs' allegations as true, a "turnback" generally does not

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

fix the legal relations between the parties as to the asserted statutory processes, because a noncitizen who is "turned back" has not yet had an initial inadmissibility determination, let alone any other determinations relating to their asylum claim, and is in the same legal position they would otherwise be. *See* Mot. 25. Further, Plaintiffs have not alleged sufficient commonality between the different individual turnbacks to support classwide claims. Mot. 24.

### B.  Managing Intake at POEs Is Committed to Agency Discretion.

Plaintiffs' APA claims fail for the additional, independent reason that they seek review of conduct that is committed to agency discretion. Mot. 25–26.[6] Contrary to Plaintiffs' arguments, DHS's and CBP's management of intake at POEs is the type of decision about how to devote limited enforcement resources the Supreme Court has held is committed to agency discretion by law. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Plaintiffs argue that their claims are reviewable because they are claiming CBP has no discretion to "flout" what they assert are mandatory statutory duties to inspect and refer asylum-seekers. Opp. 32. But even assuming the relevant statutory procedures apply to noncitizens outside the United States—which Defendants maintain they do not, *see* Mot. 27–30, *infra* § V—and even assuming they are mandatory—which Defendants again maintain they are not, *see* Mot. 26—these statutory provisions do not undermine or constrain the agency's overall discretion to determine *how and when* to engage in those procedures as part of their management of intake at POEs. For example, they do not set time periods as to when an

---

[6] This precise issue was not actually litigated in *AOL I. See Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (for issue preclusion to apply, issue must have been actually litigated). In that case, Defendants argued that metering was consistent with statutory authority. *See AOL I*, No. 3:17-cv-2366, ECF 563-1 at 40-44 & ECF 192 at 11–15. In any event, at most, the *AOL I* court's ruling regarding the interaction of these statutes can apply only to the types of claims the *AOL I* court decided (a § 706(1) claim for withholding, not delay, of agency action, and a derivative due process claim). *See AOL I*, 2021 WL 3931890; *Janjua*, 933 F.3d at 1065 (for issue preclusion to apply, the issue must have been "necessary to decide the merits").

initial inspection must occur, nor do they dictate how CBP must manage those inspections. *See* Opp. 34 (acknowledging that DHS has "latitude regarding how inspection at POEs is carried out"). Thus, even accepting Plaintiffs' allegations as true, these statutes do not preclude CBP from controlling the flow of undocumented noncitizens across the border into the POE.

Further, even seemingly mandatory procedures give way to discretion in certain contexts, including immigration enforcement. Mot. 26–27; *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761 (2005) (noting the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative comments"); *Sierra Club v. Whitman*, 268 F.3d 898, 904 (9th Cir. 2001). The Supreme Court and the Ninth Circuit have recognized that nominally mandatory immigration enforcement duties are discretionary. *See Reno*, 525 U.S. at 483 (acknowledging "discretion to abandon" removal efforts despite mandatory language); *California v. United States,* 104 F.3d 1086, 1094 (9th Cir. 1997) (recognizing that immigration enforcement decisions based on statutes with mandatory language are "committed to agency discretion"). Plaintiffs cannot dispute that inspection and processing at POEs constitute immigration enforcement. Section 1225, the statute on which Plaintiffs rely—which incorporates the asylum statute by reference—provides for inspection and processing for expedited removal, with the option for placement in non-expedited removal proceedings. *See* 8 U.S.C. § 1225(a)(1), (a)(3), (b)(1), (2); Mot. 3–4.[7] And Plaintiffs acknowledge that placement in removal proceedings is immigration enforcement. *See* Opp. 34. Further, the Supreme Court has analyzed immigration enforcement decisions against the backdrop of traditional law-enforcement principles. Just last year, the Supreme Court re-emphasized that decisions regarding immigration enforcement are subject to the same standing principles

---

[7] The fact that Plaintiffs allege they were affirmatively seeking to enter the United States to subject themselves to immigration enforcement so they could assert an asylum claim does not change the enforcement character of the procedures at issue.

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

as the traditional exercise of prosecutorial discretion. *See Texas*, 599 U.S. at 677 (citing *Sure-Tan, Inc.*, 467 U.S. at 897, which extended the principle that private parties have no cognizable interest in the nonprosecution of another to the immigration-enforcement context). Plaintiffs' attempt to distinguish immigration processing at POEs from "traditional law enforcement functions" thus fails. *See* Opp. 34.

Plaintiffs do not point to any other statute that supplies "meaningful standards" that could circumscribe CBP's discretion to manage intake at POEs. As noted, the statutory procedures Plaintiffs point to as governing inspection and processing, even if mandatory and enforceable, do not speak to the manner of controlling intake at the border. *See* 8 U.S.C. §§ 1225(a)(3), 1225(b)(1)(A)(ii), 1225(b)(2), 1158(a). Nor does DHS's broad mandate to ensure that DHS's functions "not related directly to securing the homeland are not diminished or neglected except by a specific explicit Act of Congress," 6 U.S.C. § 111(b)(1)(E) (cited at Opp. 33), provide a meaningful standard by which to measure the reasonableness of actions to manage intake at the border. This non-specific directive does not take away or constrain agency discretion to manage intake to a POE in particular instances on particular days.[8] Nor does it supply any standards by which to judge the agency's exercise of discretion to balance competing missions. The Complaint does not, for instance, allege anything near to a programmatic abdication or diminishment of POE inspection functions at the expense of anti-terrorism or other national security efforts. *See* Compl. ¶ 87 (alleging that CBP was scheduling 1,450 appointments for undocumented noncitizens per day at POEs); *see also id.* ¶¶ 20, 113 (allegations that noncitizens were permitted to wait in line to be processed). Indeed, managing the intake of undocumented noncitizens promotes § 111(b)(1)(E)'s directive, by allowing DHS to ensure

---

[8] Moreover, while Plaintiffs suggest that all immigration functions are "not related directly to securing the homeland," the Homeland Security Act recognizes overlap between immigration enforcement and national-security functions. *See, e.g.*, 6 U.S.C. § 211(g)(3)(B) (setting forth CBP OFO duty to conduct inspections at POEs "to safeguard the United States from terrorists and the illegal entry of persons").

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

that other non-homeland security functions of CBP at POEs—such as facilitating trade and travel, *see* 6 U.S.C. § 211(g)(3)(D)—are not diminished.

### C. At Minimum, the Court Should Dismiss Plaintiffs' APA Challenges to the Conduct of Mexican Officials.

If the Court determines that Plaintiff's allegations concerning agency action are sufficient to allow their APA claims to survive a motion to dismiss, the Court should nonetheless dismiss any aspect of Plaintiffs' claims that rely on the actions of independent actors in Mexico. *See* Compl. ¶¶ 5 (defining the "CBP One Turnback Policy" as including acts by "Mexican authorities"), 191–92 (referring to "coordination with Mexican authorities"). *First*, actions taken by Mexican officials or other non-DHS actors are not *agency* actions that can be evaluated under the APA. *See* Mot. 23–24 (citing 5 U.S.C. §§ 702, 704) (providing for judicial review of "agency action"); *W. State Univ. of S. California v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1133 (C.D. Cal. 2004). Accordingly, to the extent Plaintiffs can even base class claims on "each individual turnback," *see* Opp. 25, 29, 31, such claims challenging individual turnbacks can apply only to alleged turnbacks conducted by agency officers—not by Mexican officials. Plaintiffs' Opposition does not directly address this particular point. *See* Opp. 34 n.16.[9]

*Second*, the Complaint does not allege any discrete action Defendants have taken with respect to alleged coordination with Mexican officials across the border. *See supra* § V(A); Mot. 24. Plaintiffs make at most vague allegations based on

---

[9] Plaintiffs argue that the act of state and political question doctrines are inapplicable because they challenge Defendants' conduct, *see* Opp. 34 n.16, yet their claims clearly implicate the conduct of Mexican officials who are not bound by DHS's obligations. Courts may not interfere with Mexico's enforcement of its own policies within its borders, *see Underhill v. Hernandez*, 168 U.S. 250, 252 (1897), and any injury that may result from that conduct is not redressable because the effectiveness of relief depends on unforeseeable actions of a foreign country. *Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 976 (D.C. Cir. 1988).

"information and belief" regarding purported "orders" and ongoing communications between CBP and Mexican officials. Compl. ¶¶ 94, 106. This is insufficient to allege a discrete agency policy or practice that can be reviewed under the APA.

## V.    The Cited Statutes Do Not Extend Beyond the U.S. Territory.

Plaintiffs do not dispute that their Second through Fifth Claims for Relief cannot succeed if the expedited removal and asylum statutes do not apply to noncitizens still in Mexico. Plaintiffs also do not directly dispute Defendants' plain-language analysis explaining why the term "arrives in" as used in the asylum and expedited removal statutes, 8 U.S.C. §§ 1158(a)(1), 1225(a)(1), denotes physical presence within the United States. Instead, they primarily argue that, despite its plain language, "arrives in" cannot possibly denote physical presence within U.S. territory, because the asylum and expedited removal statutes provide both that those who "arrive in" and those who are "physically present in" or "present in" the United States may apply for asylum and are treated as applicants for admission. Opp. 36–37. But as Defendants explained, Mot. 28 n. 10, Congress's use of both of these phrases serves an important purpose rooted in traditional understandings in immigration law. There is a longstanding legal fiction that noncitizens who "arrive[] at a port of entry—for example, an international airport" are "on U.S. soil, but [are] not considered to have entered the country" and are "treated . . . as if stopped at the border." *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020). Consistent with this legal fiction, before the INA was amended in 1996, inadmissible noncitizens who arrived at a port of entry were subject to "exclusion proceedings," while those who were "present in" the United States were subject to "deportation proceedings." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). Congress's inclusion of both groups of noncitizens in Sections 1158(a)(1) and 1225(a)(1) made clear that those who arrive in the United States (including at an air, land, or sea POE) may still apply for asylum notwithstanding the legal fiction that they are treated as if stopped at the border. Accordingly, just because someone who is "present in" the United States is within the

United States, it does not follow that someone who "arrives in" the United States must *not be* within the United States. *See* Opp. 37.

Next, the use of the present tense "arrives in" does not, contrary to the *AOL I* court's conclusion, mean that someone who will arrive in the United States in the future has a right to apply for asylum before they arrive. *See* Opp. 37. The Ninth Circuit has rejected similar statutory interpretations. *See Guidiville v. Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 775 (9th Cir. 2008). Instead, the use of the present tense merely indicates prospective application of the statute. Mot. 28. And when "Congress use[s] the *same* tense in both elements" of a statute, courts "give both the same temporal reach, absent some reason to do otherwise." *United States v. Jackson*, 480 F.3d 1014, 1020 (9th Cir. 2007). Thus, if "arrives in" as used in 8 U.S.C. §§ 1158(a)(1) indicates a future tense, "may apply for asylum," *id.*, must indicate a future tense as well. In other words, someone who "arrives in" the United States in the future "may apply for asylum" at that point—but not before.

Similarly, the phrase "arriving in" as used in Section 1225(b)(1)(A)(ii)— which requires referral of certain noncitizens for a credible-fear interview before removal—cannot reasonably be interpreted to apply to those still in Mexico. Even if this phrase could plausibly denote a process of arriving, the statute contains no indication that such a process begins *outside* the United States. And the statutory context compels the opposite reading. Referral takes place only after an officer has inspected a noncitizen "applicant for admission" as defined in § 1225(a)(1) (which uses the phrase "arrives in"), and determined the noncitizen is inadmissible. That immigration inspection under § 1225(a)(3) takes place in the United States. Finally, referral to evaluate an asylum claim is part of the process of expedited removal *from* the United States. Mot. 29–30. Thus, Section 1225 indicates that a process of "arriving in the United States" begins when a noncitizen crosses the border. *See* Mot. 30.

Nor does the regulation defining "arriving alien" as including "an applicant for admission coming or attempting to come into the United States at a port-of-entry"

expand the territorial reach of the expedited removal statute. *See* 8 C.F.R. §§ 1.2, 1001.1(q); Opp. 38. This definition of "arriving alien" is limited to noncitizens who are "applicants for admission," which in turn is defined by § 1225(a)(1) as noncitizens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1).[10]

Finally, contrary to Plaintiffs' arguments (at Opp. 38–39), the presumption against extraterritoriality cannot *create* extraterritorial application of a statute beyond its plain language. Here, the presumption is not rebutted because the statutes do not give any "clear indication of an extraterritorial application." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). As in *Sale v. Haitian Centers Council, Inc.,* the statutory provisions here "obviously contemplate that [the relevant proceedings] would be held within the country." 509 U.S. 155, 174 & n. 29 (1993) (addressing prior version of 8 U.S.C. § 1158(a)). The second step of the "extraterritoriality framework" is applied to evaluate whether, if the statute does not apply extraterritorially, the plaintiffs' claim involves a domestic rather than an extraterritorial

---

[10] The regulatory history lends no support to Plaintiffs' interpretation of this regulation as applying to those who have not yet crossed the border. The government initially defined "arriving alien" in relevant part as "an alien who *seeks* admission to or transit through the United States . . . at a port-of-entry." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10330 (Mar. 6, 1997) (emphasis added). The definition focused on arrival at a port of entry because the government reasoned that the statute differentiates "between aliens *at* ports-of-entry and those encountered elsewhere in the United States." *United States v. Gambino-Ruiz*, --- F.4th ----, 2024 WL 256480, at *4 n.3 (9th Cir. Jan. 24, 2024) (quoting 62 Fed. Reg. at 10330) (emphasis added). The government later amended the regulation to the current language defining "arriving alien," in part, as "an applicant for admission *coming or attempting to come into* the United States at a port-of-entry," because the word "seeks" in the initial definition "suggest[ed] that an alien must have a subjective intent to gain admission in order to be an arriving alien." Amendment of the Regulatory Definition of Arriving Alien, 63 Fed. Reg. 19382, 19383 (Apr. 20, 1998). Thus, the language "coming or attempting to come into the United States" was not meant to suggest a different geographical scope, but instead to clarify that a noncitizen can be an "arriving alien" "regardless of whether he or she subjectively desires admission." *Id.*

application of the statute. *See WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018). Here, where the relevant question is whether statutory procedures apply to a group of individuals who are outside the United States, that second step is not applicable. But even if it were, the second step confirms that Plaintiffs' claims involve an impermissible extraterritorial application of the statutes. Interpreting Sections 1158 and 1225 to impose obligations on immigration officers toward noncitizens in another country would fall within the category of the "relevant conduct occur[ing] in another country," meaning that the claims "involve[] an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *WesternGeco LLC*, 138 S. Ct. at 2137 (quotation marks omitted).

Because Plaintiffs' Second through Fifth Claims for Relief are based on a claimed statutory entitlement that does not exist, these claims fail as a matter of law.

## VI.   Plaintiffs Cannot State a Due Process Claim.

Plaintiffs' Fifth Claim for Relief asserts a due process violation that is entirely derivative of their claims that the agency is acting contrary to the immigration statute. The protections of the Due Process Clause and the statutes do not extend to those still outside the United States. Mot. 31–32. Regardless, arriving noncitizens seeking admission—like the Individual Plaintiffs and the proposed class members—do not have any constitutional due process rights regarding their applications for asylum and related procedures. *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 (9th Cir. 2022). Arriving noncitizens have "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam,* 140 S. Ct. at 1961. As the Ninth Circuit recently clarified, this means that any "rights [arriving noncitizens] may have in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause." *Mendoza-Linares*, 51 F.4th at 1167 (rejecting argument that *Thuraissigiam* "effectively constitutionalized the statutory procedures governing expedited removal"). Thus, an alleged deprivation of these same statutory rights does not also state a claim for a constitutional due

process violation, and the Court should dismiss Plaintiffs' Fifth Claim.

## VII.  Plaintiffs Cannot State a Claim under the Alien Tort Statute.

The Supreme Court has instructed courts to engage in "vigilant doorkeeping" and exercise "great caution" and restraint before creating a new cause of action under the Alien Tort Statute (ATS), 28 U.S.C. § 1350. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 725, 728 (2004); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1403 (2018). Here, even leaving aside the *AOL I* court's ruling that the alleged conduct does not violate a well-defined universal international-law norm, *AOL I*, 2021 WL 3931890, at *2, Defendants have pointed to multiple compelling reasons the Court should decline to recognize a cause of action for a violation of non-refoulement standards, which warrants dismissal of Plaintiffs' Sixth Claim for Relief as non-actionable. Mot. 32–35. In particular, there are extremely "sound reasons to think Congress might doubt the efficacy or necessity" of recognizing a cause of action against the United States for violations of non-refoulement. *See Jesner*, 138 S. Ct. at 1402. Congress enacted a withholding-of-removal provision at § 1231(b)(3)(A) that embodies U.S. non-refoulement obligations, but it expressly declined to create any procedural or substantive rights and placed strict limitations on judicial review and relief relating thereto. Mot. 33–34. As Congress has expressly limited enforceable rights for non-refoulement obligations, the Court should decline to recognize Plaintiffs' asserted cause of action.[11]

## CONCLUSION

For the reasons stated herein and in Defendants' Motion, this Court should dismiss Plaintiffs' Complaint for lack of jurisdiction or failure to state a claim.

---

[11] This is not, as Plaintiffs frame it, a "preemption" argument. *See* Opp. 44–45. It is an argument that, under *Sosa*, the Court should not exercise its restrained discretion to create a cause of action where Congress has expressly declined to do so. However, Plaintiffs' argument that "the INA . . . cannot preempt . . . the ATS" is misplaced. *See* Opp. 45. The ATS is a jurisdictional statute only; it does not create any substantive cause of action. *See Sosa*, 542 U.S. at 713–14.

DATED: February 12, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Counsel

SAMUEL P. GO
Assistant Director

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
Email: katherine.j.shinners@usdoj.gov

JASON WISECUP
Trial Attorney

*Counsel for Defendants*

REPLY MEM. IN SUPP. OF
DEFS.' MOT. TO DISMISS
Case No. 3:23-cv-01367-AGS-BLM

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: February 12, 2024          Respectfully submitted,

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice

22