BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director, Office of Immigration Litigation –
District Court Section
EREZ REUVENI
Counsel
CHRISTINA P. GREER
Senior Litigation Counsel
KATHERINE J. SHINNERS (DC 978141)
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation – District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259 | Fax: (202) 305-7000
JASON WISECUP
Trial Attorney

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA
### (San Diego)

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:23-cv-01367-AGS-BLM |
| *Plaintiffs*, | Hon. Andrew G. Schopler |
| v. | **RESPONSE TO PLAINTIFFS' BRIEF REGARDING PRESIDENTIAL PROCLAMATION** |
| ALEJANDRO N. MAYORKAS, Secretary of Homeland Security, *et al.*, in their official capacities, | |
| *Defendants*. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ............................................ 2

ARGUMENT ................................................................................................................ 5

    I.    Although the Proclamation Changes the Factual and Legal Landscape Concerning the Entry of Noncitizens at POEs, Defendants Do Not Currently Ask the Court to Take Action as a Result of the Proclamation. ................................................................ 5

    II.   Plaintiffs Cannot Employ their Current Claims to Challenge the Proclamation's Suspension and Limitation on Entry. ......................... 7

CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

*Al Otro. v. Mayorkas*,
  No. 22-55988, Dkt. Entry 127 (May 30, 2024) ............................................. 4

*Al Otro Lado v. Mayorkas*,
  No. 23-3396, Dkt. Entry 42 (May 13, 2024) ............................................. 3, 4

*Al Otro Lado, Inc. v. Mayorkas*,
  No. 17-cv-02366, 2022 WL 3970755 (S.D. Cal. Aug. 23, 2022) ................... 9

*Brnovich v. Biden*,
  630 F. Supp. 3d 1157 (D. Ariz. 2022) ........................................................... 9

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ......................................................................... 8

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ...................................................................................... 8

*League of Women Voters of Ind. v. Sullivan*,
  5 F.4th 714 (7th Cir. 2021) .......................................................................... 10

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ...................................................................................... 9

*Norton v. S. Utah Wilderness, All.*, 542 U.S. 55 (2004) .................................................................... 9

*Sale v. Haitian Ctrs. Council*,
  509 U.S. 155 (1993) ................................................................................ 8, 9

*Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*,
  742 F.3d 282 (7th Cir. 2014) ...................................................................... 10

*Wild Fish Conservancy v. Jewell*,
  730 F.3d 791 (9th Cir. 2013) ........................................................................ 9

**STATUTES**

6 U.S.C. § 211(g) ............................................................................................. 5

8 U.S.C. § 1158(a)(1).................................................................................................4

8 U.S.C. § 1182(f).............................................................................................. 1, 4, 8

8 U.S.C. § 1185(a) ......................................................................................... 1, 4, 8, 9

8 U.S.C. § 1225 ..........................................................................................................3, 4

8 U.S.C. § 1252(f)(1) ………………………………………………………………3

## INTRODUCTION

Plaintiffs' lawsuit alleges that U.S. Customs and Border Protection (CBP) has an undisclosed or unwritten policy or practice of "turning back" noncitizens who approach the international boundary line at Ports of Entry (POEs) along the U.S.-Mexico Border and who do not have CBP One appointments. ECF 1 ("Compl.") ¶¶ 1, 5. Their Complaint asserts various causes of action, including that this alleged policy or practice violates CBP's internal guidance concerning the management and processing of noncitizens without documents sufficient for admission (the "November 2021 Guidance"). Plaintiffs point to the provision of the November 2021 Guidance that states that "asylum seekers or others seeking humanitarian protection cannot be required to submit advance information in order to be processed at a Southwest Border land POE." *See id.* ¶ 160. Defendants have disputed that the alleged border-wide "turnback" policy or widespread practice exists, and assert that CBP has been in compliance with its November 2021 Guidance.

Defendants recently filed a notice to inform the Court and Plaintiffs of a change in the governing policies and procedures at POEs as a result of the Presidential Proclamation of June 3, 2024. ECF 78 ("Notice"). Issued under the President's authority under 8 U.S.C. §§ 1182(f) and 1185(a), the Proclamation suspends and limits entry across the southern border of certain noncitizens during times of high encounters. In accordance with the Proclamation, new CBP guidance provides that the suspension and limitation on entry will be implemented at POEs by preventing the entry of noncitizens described in the Proclamation at the international boundary line. It also provides that, during periods of suspension and limitation on entry, guidance implementing the Proclamation supersedes the provisions of the November 2021 Guidance.

As the Proclamation thus changed the legal and factual landscape governing entry of noncitizens across the U.S.-Mexico border at POEs—at least during the time periods when the Proclamation's suspension and limitation on entry is in effect—

1

RESPONSE TO PLAINTIFFS'
BR. RE: PROCLAMATION
Case No. 3:23-cv-01367-AGS-BLM

1  Defendants notified Plaintiffs and the Court of this change. The existence of a suspension and limitation on entry that is separate from the alleged "Turnback Policy" challenged in the Complaint will very likely impact future case management decisions and the weighing of the evidence, should any of Plaintiffs' claims survive Defendants' pending motion to dismiss. The Proclamation does not alter Defendants' arguments for dismissal of Plaintiffs' existing Complaint, however, and Defendants do not currently seek any relief as a result of the Proclamation or argue that Plaintiffs' claims are mooted solely by the Proclamation or guidance implementing it. Although the Proclamation's suspension and limitation on entry is currently in effect, Defendants acknowledge it may be lifted if encounter levels decrease.

But even if Plaintiffs' claims are not necessarily mooted by the Proclamation, it does not follow that their current claims challenge its suspension and limitation on entry. Contrary to Plaintiffs' assertion, the Proclamation and its implementation cannot be viewed through the same lens as their current allegations of failures to inspect and process noncitizens pursuant to an alleged unwritten or undisclosed "Turnback Policy." The Proclamation's provisions for suspension and limitation on entry were issued pursuant to the President's authority under §§ 1182(f) and 1185(a), and no Individual Plaintiff claims to have been subject to it. Any challenge to the suspension and limitation on entry is thus subject to particular defenses that Defendants could not have asserted in their pending motion to dismiss. If Plaintiffs wish to challenge implementation of the Proclamation, they would, at minimum, have to seek leave to amend their Complaint to do so.

## PROCEDURAL AND FACTUAL BACKGROUND

***This Lawsuit.*** On July 27, 2023, several individual Plaintiffs, along with two Organizational Plaintiffs, filed the Complaint in this matter. Compl. ¶¶ 10–17, 19–21. The Complaint alleges that CBP has a policy and widespread practice of "turning back arriving noncitizens without CBP One Appointments and thereby denying them access to the U.S. asylum process." *Id.* ¶ 1. Plaintiffs claim that, under this so-called

"CBP One Turnback Policy," "asylum seekers [who] approach a POE are typically met at or near the 'limit line,' the physical demarcation point between U.S. and Mexican territory, by CBP officers or Mexican authorities" and are "turned back to Mexico" if they do not have a CBP One appointment confirmation for that date and time. *Id.* ¶ 5. The Individual Plaintiffs allege they were turned back from, not permitted immediate entry at, or were discouraged by other migrants from seeking to enter at, certain POEs in July 2023. *See id.* All Individual Plaintiffs entered the United States in August 2023 with CBP One appointments obtained either through the ordinary course or through litigation agreements. ECF 50-3, Watson Decl. ¶¶ 18–19.

The Complaint asserts several claims, all of which are based on the alleged "CBP One Turnback Policy." The first claim relies on the *Accardi* doctrine and asserts that the "CBP One Turnback Policy" violates CBP's own policy—set forth in the November 2021 Guidance and other agency statements—that a CBP One appointment is not required to be processed at a POE. Compl. ¶¶ 158–166. Plaintiffs' second through fourth claims are brought under the Administrative Procedure Act (APA) and assert that the alleged "CBP One Turnback Policy" and each application thereof denies inspection and/or asylum processing under 8 U.S.C. § 1225, and is arbitrary and capricious, contrary to law or in excess of statutory authority, and withholds or unreasonably delays required agency action. *Id.* ¶¶ 167–198. Plaintiffs' remaining claims are a due process claim that is derivative of their APA statutory claims (*id.* ¶¶ 199–208), and a claim of alleged violations of customary international law brought pursuant to the Alien Tort Statute (ATS) (*id.* ¶¶ 209–216).

Plaintiffs initially sought a class-wide preliminary injunction based on their *Accardi* claim, seeking to enforce CBP's November 2021 Guidance. ECF 37–38. The Court denied the preliminary injunction and the accompanying request for class certification because 8 U.S.C. § 1252(f)(1) precludes class-wide relief that enjoins or restrains the operation of covered statutory provisions, such as the inspection and processing provisions of 8 U.S.C. § 1225. ECF 62, 63. Plaintiffs' appeal from the

denial of the preliminary injunction has been argued and submitted. *See Al Otro Lado v. Mayorkas*, No. 23-3396, Dkt. Entry 42 (May 13, 2024). Meanwhile, Defendants moved to dismiss the Complaint on several grounds, including that the Individual Plaintiffs' claims are moot, the Organizational Plaintiffs lack standing, and the Complaint fails to state a claim because the cited provisions of 8 U.S.C. §§ 1158 and 1225 do not apply to noncitizens who are not on U.S. soil.[1] *See* ECF 68, 68-1.

**The Proclamation.** On June 3, 2024, the President signed a Proclamation under 8 U.S.C. §§ 1182(f) and 1185(a) titled "Securing the Border." ECF No. 78-1 ("Proclamation"). That Proclamation finds the entry of certain categories of persons during periods of high encounters to be detrimental to the interests of the United States, and limits and suspends the entry of such persons across the southern border beginning on June 5, 2024, and continuing while encounters remain above specified thresholds. Proclamation §§ 1, 2. As relevant here, the Proclamation excepts from its suspension and limitation on entry any noncitizen who presents at a POE pursuant to a pre-scheduled time and place. Proclamation §§ 1, 3(a)-(b). CBP officers are also authorized to except other noncitizens from the suspension and limitation on entry based on consideration of "significant law enforcement, officer and public safety, urgent humanitarian, and public health interests," or "due to operational considerations." Proclamation § 3(b)(vi)-(vii). The President authorized the Secretary of Homeland Security and the Attorney General to "issue any instructions, orders, or regulations as may be necessary to implement this [P]roclamation." *Id.* § 3(d).

On June 3, 2024, the Secretary of Homeland Security signed a memorandum directing CBP and other components to take all appropriate actions to implement the Proclamation's suspension and limitation on entry. *See* ECF No. 78-2. On June 4, 2024, the CBP Senior Official Performing the Duties of the Commissioner issued a

---

[1] A decision from the Ninth Circuit on the scope of the relevant statutes is likely forthcoming, now that the *AOL I* appeal has been released from the mediation program. *See Al Otro v. Mayorkas*, No. 22-55988, Dkt. Entry 127 (May 30, 2024).

memorandum providing that, in accordance with the President's authority to suspend entry under § 1182(f) and to prescribe rules, regulations, and orders, and subject to limitations and exceptions on the entry of noncitizens into the United States under § 1185(a), "the Proclamation will be implemented at ports of entry by preventing the entry of noncitizens described in the Proclamation at the international boundary line." ECF 78-3 (CBP Proclamation Memo) at 2; *see also* Compl. ¶ 5 (defining "limit line" as the "physical demarcation point between U.S. and Mexican territory"). The CBP Proclamation Memo further provides that, "during periods in which the measures described in the Presidential Proclamation … apply," the Office of Field Operations (OFO) and U.S. Border Patrol (USBP) "shall follow the procedures outlined" in new operational guidance. CBP Procl. Memo at 2. OFO is the division of CBP charged with coordination of enforcement activities at POEs. 6 U.S.C. § 211(g). For OFO, the provisions of its operational guidance, *Implementation of Presidential Proclamation and Interim Final Rule, Securing the Border*, supersede the provisions in the November 2021 Guidance and May 11, 2023 guidance titled *Post-Title 42 Port Operations*, during periods of suspension and limitation on entry. *See* CBP Procl. Memo at 2; *see also* ECF 50-3, Watson Decl. Ex. A–C.

On June 5, 2024, Defendants filed a notice of the Proclamation to advise Plaintiffs and the Court of the Proclamation's impact on operations at the international boundary line at POEs, attaching the Proclamation, the DHS Proclamation Memo, and the CBP Proclamation Memo. ECF 78. The Court subsequently issued an order providing Plaintiffs the opportunity to submit a brief explaining what impact the Presidential action has "on either their claims or the motion currently under submission," and permitting Defendants to file a response. ECF 79.

## ARGUMENT

**I. Although the Proclamation Changes the Factual and Legal Landscape Concerning the Entry of Noncitizens at POEs, Defendants Do Not Currently Ask the Court to Take Action as a Result of the Proclamation.**

In their brief, Plaintiffs argue that their claims challenging the purported "CBP

One Turnback Policy"—including their *Accardi* claim seeking to enforce the November 2021 Guidance—are not mooted by the Proclamation and its implementing guidance, because the Proclamation's suspension and limitation on entry is "temporary." ECF 80 ("Pls.' Br.") at 6–7, 9, 10. Although Defendants dispute that there is a "CBP One Turnback Policy" and have raised several meritorious arguments for dismissal of Plaintiffs' claims, Defendants do not at this time argue for dismissal based on mootness resulting from the Proclamation.[2] Defendants acknowledge that the Proclamation's suspension and limitation on entry remains in effect only while encounter levels are above certain thresholds. Proclamation § 2(a) (providing for discontinuation after a sustained drop in daily encounters); *id.* § 2(b) (providing for continuation or reactivation after a sustained increase in daily encounters). Defendants also acknowledge that the CBP guidance implementing the Proclamation supersedes the November 2021 Guidance only "during periods in which the measures described in the Presidential Proclamation … apply." *See* CBP Proclamation Memo, at 2. As the Proclamation's suspension and limitation on entry may be discontinued, continued, or reactivated depending on the number of encounters, Defendants are not now arguing that the Proclamation moots Plaintiffs' current claims. Nor does the Proclamation alter Defendants' arguments for dismissal of Plaintiffs' claims. Defendants' Notice thus did not seek any relief from the Court or ask the Court to take any action at this time as a result of the Proclamation.

However, the Proclamation will nonetheless likely impact this lawsuit going forward if any of Plaintiffs' claims survive dismissal. Plaintiffs' claims involve allegations of "turnbacks" at POEs and seek to enforce portions of the November 2021 Guidance that are currently superseded. The fact that the suspension and limitation on entry may be in effect during the coming months (for periods of yet-unknown duration) will influence any future case management discussions and may counsel

---

[2] Defendants have argued, however, that the Individual Plaintiffs' claims are moot for other reasons. *See* ECF 68-1 at 11–12.

for a stay of the litigation. The Proclamation's suspension and limitation on entry would also impact the Court's evaluation of factual arguments at future stages of this case, such as at class certification. For example, if Plaintiffs were to introduce evidence that noncitizens were told they cannot cross the border at a time when the suspension and limitation on entry was in effect, this would not support their allegations that an unwritten "Turnback Policy" existed in the past or will exist in the future. Nor would it constitute evidence of a violation of an internal CBP policy.

Accordingly, Defendants determined that the appropriate course was to ensure that Plaintiffs and the Court were made aware of the impact of the Proclamation on operations at POEs at the time of the Proclamation's implementation, rather than to wait until some future stage of the litigation. The Notice adequately serves this purpose by explaining and providing the key relevant information: that the Proclamation's provisions for suspension and limitation on entry are implemented at POEs by preventing the entry of noncitizens described in the Proclamation at the international boundary. As the Notice was submitted for informational purposes and Defendants are not now requesting that the Court take action as a result of the Proclamation, the Defendants need not be required to produce more granular OFO operational guidance[3] at this stage (*see* Pls.' Br. 2, 10), particularly as the guidance also contains law-enforcement sensitive procedures that go beyond the core allegations in this case.

## II. Plaintiffs Cannot Employ their Current Claims to Challenge the Proclamation's Suspension and Limitation on Entry.

Although the Proclamation may impact the course of the litigation, that does not mean Plaintiffs' current claims can properly be viewed as a challenge to actions taken to implement the Proclamation, which was issued after the filing of the Complaint. In arguing against mootness, Plaintiffs incorrectly assert that the Proclamation and implementing guidance is a continuance of, or "is consistent with" the

---

[3] Any USBP Guidance referenced in the CBP Proclamation Memo is completely irrelevant to this case, which concerns OFO operations at POEs.

practices alleged in their Complaint, and that their APA, due process, and ATS claims fairly encompass a challenge to CBP's actions taken pursuant to the Proclamation. *See* Pls.' Br. at 8–10. Actually, however, any actions taken pursuant to the Proclamation's suspension and limitation on entry are taken pursuant to the President's statutory authority set forth in 8 U.S.C. §§ 1182(f) and 1185(a). A challenge to such actions would necessarily be subject to additional, and different, defenses and arguments for dismissal. If Plaintiffs wish to challenge actions that implement the Proclamation, they would at minimum need to seek leave to amend their Complaint to make that claim expressly.

There are several legal differences between Plaintiffs' claims challenging the alleged unwritten "CBP One Turnback Policy" and any claim challenging the prevention of entry at a POE pursuant to Presidential proclamation. Defendants set forth just some of those differences here. As an initial matter, the President is not an agency and his actions are not subject to APA review. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (holding that Congress did not expressly allow for review of the President's actions in the APA so "his actions are not subject to its requirements"). A challenge to the Proclamation's suspension and limitation on entry thus cannot be based in the APA or its standards. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018). Furthermore, the legal basis for actions taken pursuant to the Proclamation is different from other actions in managing intake at POEs. The prevention of entry at the international boundary line set forth in the CBP Proclamation Memo is authorized by the President's express statutory authority under § 1182(f), which provides that the President may "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). As the Supreme Court has noted, "[i]t is perfectly clear that 8 U.S.C. § 1182(f) ... grants the President ample power to establish a naval blockade that would simply deny illegal Haitian immigrants the ability to disembark on our shores." *Sale v. Haitian Ctrs.*

1  *Council*, 509 U.S. 155, 187 (1993). Any alleged "turnback" pursuant to the Presi-
2  dential Proclamation would clearly be authorized by § 1182(f).[4] But, at minimum,
3  analyzing the lawfulness of such "turnbacks" would require an analysis of that stat-
4  ute. Although Defendants maintain that all of Plaintiffs' claims are subject to dis-
5  missal, regardless of their legal basis, Defendants would have additional arguments
6  for dismissal where the claim challenges a practice implementing the specific statu-
7  tory authority to prevent entry of noncitizens. *See Al Otro Lado, Inc. v. Mayorkas*,
8  No. 17-cv-02366, 2022 WL 3970755, at *1 (S.D. Cal. Aug. 23, 2022) (carving out
9  from declaratory judgment any actions taken pursuant to "independent, express, and
10 lawful statutory authority").

11  Moreover, the APA does not authorize the kind of broad, amorphous attack
12 on agency conduct that Plaintiffs' argument envisions. "'[A]gency action' is defined
13 in § 551(13) to include 'the whole or a part of an agency rule, order, license, sanction,
14 relief, or the equivalent or denial thereof, or failure to act.'" *Norton v. S. Utah Wil-*
15 *derness All.*, 542 U.S. 55, 62 (2004). These are "circumscribed, discrete agency ac-
16 tions, as their definitions make clear." *Id.* APA challenges can succeed only where
17 the plaintiff "identif[ies] a discrete 'agency action' that fits within the APA's defi-
18 nition of that term." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir.
19 2013). It is "entirely certain" that an "entire 'program' ... cannot be laid before the
20 courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497
21 U.S. 871, 892–93 (1990). Thus, "[c]ourts should not, and indeed cannot, review
22 broad, generalized agency policies in the abstract. Nor can they separate an agency's
23 decision from the statement intended to implement that decision." *Brnovich v. Biden*,
24 630 F. Supp. 3d 1157, 1171 (D. Ariz. 2022) (rejecting challenge to "mass parole and
25 non-detention" policies in general, rather than a specific agency decision or docu-
26 ment). Thus, if APA review is even available to challenge actions taken pursuant to

---

[4] The Proclamation is also authorized by 8 U.S.C. § 1185(a), which authorizes the President to subject the entry of noncitizens to limitations and exceptions.

the Proclamation, Plaintiffs cannot shoehorn a challenge to that separate policy into their challenge to an alleged broad, generalized "CBP One Turnback Policy."

Plaintiffs rely on an out-of-circuit case, *League of Women Voters of Ind. v. Sullivan*, 5 F.4th 714 (7th Cir. 2021), to argue that their non-*Accardi* claims are not moot, because, they say, the "gravamen" of their challenge is the same because all noncitizens who are turned back are not inspected and processed. But regardless of whether the Proclamation moots Plaintiffs' claims, it would be incorrect to determine that their current claims are equivalent to a challenge to any practices authorized by the Proclamation. As explained, the legal differences between the prevention of entry to the United States under a Presidential proclamation and other alleged "turnbacks" are "so substantial as to make it unwise" to consider those two actions together in one claim. *See Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 288 (7th Cir. 2014). Unlike in *Smith* or *League of Women Voters*, a challenge to the Proclamation or its implementation would present distinct legal questions that are not applicable to Plaintiffs' current claims. Relatedly, Plaintiffs have not shown that they have standing to address the new policy, which was issued close to a year after they filed their Complaint. They have not alleged that the current practice "continue[s] to apply to" them, *see id.*, and they likely cannot do so, given that each Individual Plaintiff has long since entered the United States. The Complaint also does not identify any individual "turnback" conducted pursuant to the Proclamation or allege that Plaintiffs are otherwise injured by the practice for purposes of Article III standing. For these reasons, Plaintiffs' current Complaint cannot be viewed as challenging the Presidential Proclamation or practices implementing it.

## CONCLUSION

Although the Proclamation is relevant to operations at POEs, Defendants do not currently argue that Plaintiffs' claims are moot as a result of the Proclamation. Contrary to Plaintiffs' arguments, however, their current claims do not encompass a challenge to the Proclamation or its implementation.

| | | |
|---|---|---|
| 1 | DATED: June 27, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| 4 | | WILLIAM C. PEACHEY |
| 5 | | Director |
| 6 | | EREZ REUVENI |
| 7 | | Counsel |
| 8 | | CHRISTINA P. GREER |
| 9 | | Senior Litigation Counsel |
| 10 | | |
| 11 | | /s/ Katherine J. Shinners<br>KATHERINE J. SHINNERS |
| 12 | | Senior Litigation Counsel |
| 13 | | United States Department of Justice<br>Civil Division |
| 14 | | Office of Immigration Litigation |
| 15 | | District Court Section<br>P.O. Box 868, Ben Franklin Station |
| 16 | | Washington, D.C. 20044 |
| 17 | | Tel: (202) 598-8259 | Fax: (202) 305-7000<br>Email: katherine.j.shinners@usdoj.gov |
| 18 | | |
| 19 | | JASON WISECUP<br>Trial Attorney |
| 20 | | |
| 21 | | |
| 22 | | *Counsel for Defendants* |

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: June 27, 2024        Respectfully submitted,

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
United States Department of Justice