MAYER BROWN LLP
Matthew H. Marmolejo (CA Bar No. 242964)
mmarmolejo@mayerbrown.com
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071-1503
Telephone: +1.213.229.9500
Michelle N. Webster (DC Bar No. 985265)
(*pro hac vice*)
M*webster@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone:   +1.202.263.3000
Facsimile:    +1.202.263.3300

VINSON & ELKINS LLP
Stephen M. Medlock (VA Bar No. 78819)
(*pro hac vice*)
*smedlock@velaw.com*
2200 Pennsylvania Ave., N.W., Ste. 500 W
Washington, DC 20037
Telephone:   +1.202.639.6500
Facsimile:    +1.202.879.8939

CENTER FOR GENDER AND REFUGEE STUDIES
Melissa Crow (DC Bar No. 453487)
(*pro hac vice*)
*crowmelissa@uclawsf.edu*
1121 14th Street, N.W., Suite 200
Washington, DC 20005
Telephone: +1.202.355.4471
Facsimile:  +1.415.581.8824

*Additional Attorneys for Plaintiffs Listed on Next Page*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AL OTRO LADO, Inc., *et al.*, | Case No. 3:23-cv-01367-AGS-BLM |
| Plaintiffs, | Hon. Andrew G. Schopler |
| v. | **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY** |
| ALEJANDRO MAYORKAS, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| 1 | MAYER BROWN LLP |
| | Matthew E. Fenn (NY Bar No. 5391149) |
| 2 | (*pro hac vice*) |
| | *Mfenn@mayerbrown.com* |
| 3 | 71 S. Wacker Dr. |
| | Chicago, IL 60606 |
| 4 | Telephone: +1.312.782.0600 |
| | Facsimile: +1.312.706.8139 |
| 5 | |
| | VINSON & ELKINS LLP |
| 6 | Evan Miller (DC Bar No. 219310) |
| | (*pro hac vice*) |
| 7 | *emiller@velaw.com* |
| | Nataly Farag (DC Bar No. 90006516) |
| 8 | (*pro hac vice*) |
| | *nfarag@velaw.com* |
| 9 | Alex Rant (DC Bar No. 1780786) |
| | (*pro hac vice*) |
| 10 | *arant@velaw.com* |
| | Rami Abdallah E. Rashmawi (DC Bar No. 1780184) |
| 11 | (*pro hac vice*) |
| | *rrashmawi@velaw.com* |
| 12 | 2200 Pennsylvania Ave., N.W., Ste. 500 W |
| | Washington, DC 20037 |
| 13 | Telephone:  +1.202.639.6500 |
| | Facsimile:   +1.202.879.8939 |
| 14 | Ethan Nutter (Texas Bar No. 24104988) |
| | (*pro hac vice forthcoming*) |
| 15 | *enutter@velaw.com* |
| | 200 W. 6th Street, Suite 2500 |
| 16 | Austin, TX 78701 |
| | Telephone:  +1.512.542.8555 |
| 17 | Facsimile:   +1.512.542.8612 |
| 18 | CENTER FOR CONSTITUTIONAL RIGHTS |
| | Baher Azmy (NY Bar No. 2860740) |
| 19 | (*pro hac vice forthcoming*) |
| | *bazmy@ccrjustice.org* |
| 20 | Angelo Guisado (NY Bar No. 5182688) |
| | (*pro hac vice forthcoming*) |
| 21 | *aguisado@ccrjustice.org* |
| | 666 Broadway, 7th Floor |
| 22 | New York, NY 10012 |
| | Telephone: +1.212.614.6464 |
| 23 | Facsimile: +1.212.614.6499 |
| 24 | AMERICAN IMMIGRATION COUNCIL |
| | Suchita Mathur (NY Bar No. 5373162) |
| 25 | (*pro hac vice*) |
| | *smathur@immcouncil.org* |
| 26 | 1331 G St. NW, Suite 200 |
| | Washington, DC 20005 |
| 27 | Telephone: +1.202.507.7523 |
| | Facsimile: +1.202.742.5619 |
| 28 | |

CENTER FOR GENDER & REFUGEE STUDIES
Neela Chakravartula (CA Bar No. 254746)
*neela@uclawsf.edu*
Dulce Rodas (CA Bar No. 352188)
*rodasdulce@uclawsf.edu*
UC College of the Law, San Francisco
200 McAllister Street
San Francisco, CA 94102
Telephone: +1.415.565.4877
Facsimile:  +1.415.581.8824

CENTER FOR GENDER & REFUGEE STUDIES
Robert Pauw (WA Bar No. 13613)
(*pro hac vice*)
*rpauw@ghp-law.net*
c/o Gibbs Houston Pauw
1000 Second Avenue, Suite 1600
Seattle, WA 98104
Telephone: +1.206.682.1080
Facsimile:  +1.206.689.2270

# Table of Contents

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 1

   A. Plaintiffs AOL and HBA have sufficient frustration of mission and diversion of resources injuries to satisfy Article III standing. ........................ 1

   B. *Alliance for Hippocratic Medicine* reaffirmed *Havens* and its progeny. ............................................................................................................. 5

   C. *Murthy* is irrelevant because plaintiffs here challenge the direct actions of Defendants. .......................................................................................... 7

   D. Plaintiffs also include individuals and a proposed class of noncitizens who have been directly harmed by Defendants' conduct. ............................. 9

CONCLUSION .............................................................................................................. 9

i

Pls. Resp. to Defs. Supplemental Authority, CASE NO. 3:23-CV-01367-AGS-BLM

## Table of Authorities

**Page**
**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
  2021 WL 3931890 (S.D. Cal. 2021) ................................................................................. 9

*East Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ...................................................................................... 4, 5

*East Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020) ........................................................................................... 4

*El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*,
  959 F.2d 742 (9th Cir. 1991) ........................................................................................... 5

*Fair Hous. Of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ...................................................................................... 3, 4

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) .............................................................................................. passim

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .......................................................................................... 1, 3, 5, 6

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ......................................................................................... 5

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ........................................................................................... 6

*Murthy v. Missouri*,
  144 S.Ct. 1972 (2024) ......................................................................................... 1, 7, 8, 9

*Nielsen v. Thornell*,
  101 F.4th 1164 (9th Cir. 2024), *as amended* (July 8, 2024) ......................................... 4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ............................................................................................ 9

## I. INTRODUCTION

Neither *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), nor *Murthy v. Missouri*, 144 S.Ct. 1972 (2024), cast any doubt on relevant Ninth Circuit precedent or deprive Organizational Plaintiffs of standing in this case. *Cf.* ECF No. 83 at 1-2. *Alliance* does not change the law, and in any event, Plaintiffs' allegations here are distinguishable from the plaintiffs' allegations in that case. *Murthy* is inapposite because it involved allegedly harmful conduct by third parties not before the court. Here, Plaintiffs have sued the individuals directly responsible for the harm they seek to remedy. This Court should reject Defendants' new arguments and deny Defendants' motion to dismiss.

## II. ARGUMENT

### A. Plaintiffs AOL and HBA have sufficient frustration of mission and diversion of resources injuries to satisfy Article III standing.

Organizational Plaintiffs Al Otro Lado, Inc. (AOL) and Haitian Bridge Alliance (HBA) have standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and Ninth Circuit precedent interpreting that decision. Defendants' policies have frustrated both organizations' missions, and as a result, both have had to divert resources to address the consequences of these policies.

AOL is a non-profit advocacy and legal services organization whose mission is to defend the rights of migrants by providing "holistic legal and humanitarian support," and "free direct legal services on both sides of the U.S.-Mexico border and beyond." Compl. ¶10. AOL also provides "legal education, representation, accompaniment, and human rights monitoring for thousands of asylum seekers in Tijuana every year" and "documents human rights violations committed by U.S. and Mexican government officials against refugees." *Id*.

HBA is a non-profit whose "mission is to assist Haitian and other immigrants to acclimate to the United States and ensure their success in navigating their new lives." Compl. ¶11. HBA "regularly brings delegations to the border to provide legal

1  orientations and Know Your Rights trainings to migrants from Haiti, the Caribbean, and Africa; interview individuals and family units to identify system issues uniquely affecting Black migrants," and "assess[] individuals' eligibility for relief and identify[] those with vulnerabilities that may require immediate assistance." *Id*. ¶11.

Defendants' CBP One Turnback Policy has put enormous strains on AOL and HBA, frustrated their missions, and forced them to divert resources away from their core programs. Pursuant to this policy, Defendants have denied noncitizens without CBP One appointments access to ports of entry, thereby preventing them from accessing the U.S. asylum system and forcing them to wait indefinitely in precarious conditions in northern Mexico. *Id*. ¶¶ 2, 6. The acute material and technical assistance needs of these migrants, who but for the challenged policy would be able to seek asylum at POEs, have impaired AOL and HBA's ability to provide legal services to noncitizens at the southern border and assist them in adjusting to life in the United States. Compl. ¶¶ 145, 147, 148-50. Both organizations have been "forced to divert significant resources to provide technical assistance to migrants [in Mexico] trying to navigate the [CBP One] app." Compl. ¶¶ 85, 10-11. Defendants' policy has also forced AOL and HBA to prioritize emergency humanitarian services to migrants in Tijuana over the rest of their core programs. *Id.* ¶¶ 147, 149.

As explained in Plaintiffs' Opposition to Defendants' Motion to Dismiss, both AOL and HBA have plausibly alleged injuries based on a frustration of their respective missions and been forced to divert resources away from their core programs. ECF No. 72 at 15-16. *See* Compl. ¶¶85 (diverting resources to provide technical assistance to asylum seekers trying to navigate the CBP One app); 141-47 (AOL) (diverting resources to monitor POEs and document turnbacks, accompany asylum seekers to, and advocate for them as they present at, POEs without CBP One appointments, update materials in various languages to educate and inform migrants, and visit shelters to advise asylum seekers about new border policies); 148-51 (HBA) (shifting programmatic focus areas to prioritize humanitarian services at the border,

devising new "know your rights" programs for people stranded in Mexico, and providing assistance to Haitians struggling to use CBP One; diverting funds to secure office space in Reynosa and to provide longer-term accommodations due to extended waiting times resulting from CBP One Turnback Policy). These types of frustration of purpose and diversion of resources have long satisfied the minimal burden for Article III standing. *See Havens*, 455 U.S. at 367.[1]

*Havens Realty* involved a Fair Housing Act challenge brought by a class of individuals and a fair housing organization that operated a housing counseling service and investigated complaints regarding housing discrimination. 455 U.S. at 368. They sued a landlord who falsely informed Black renters that no units were available, alleging that the landlord's discriminatory steering practices "had frustrated the organizations counseling and referral services, with a consequent drain on resources." *Id.* at 369. Based on those allegations, the Court held that "there can be no question that the organization ha[d] suffered an injury in fact," and affirmed the organization's standing on its own behalf. *Id.* at 379.

The Ninth Circuit has similarly affirmed that costs incurred to redress the harmful impact of a defendant's policy are sufficient to establish standing. *See Fair Hous. Of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). There the court held that a defendant's discriminatory policy against Black tenants required the plaintiff— an equal housing organization—to divert resources that "caused it to suffer injury to its ability to provide outreach and education (i.e., counseling)." 285 F.3d at 905. The

---

[1] While plaintiffs' allegations in the Complaint are sufficient to defeat a motion to dismiss, there is additional evidence in the record to support Plaintiffs' standing allegations. *See* Decl. of Erika Pinheiro ECF No. 39-16 ¶¶64, 67-66 (describing AOL's diversion of resources to re-do "know your rights" material based on new CBP One Turnback Policy and undertake humanitarian efforts, including identifying medically vulnerable refugees to support them in crossing the border); Decl. of Nicole Phillips ECF No. 39-22 ¶¶ 31, 34, 55-56 (describing HBA's diversion of resources towards noncitizens "stranded in Mexico" as a result of the CBP One Turnback Policy).

organizational plaintiff incurred costs for "design, printing, and dissemination of literature aimed at redressing the impact of" the defendant's policies on the population it served, which supported a "frustration of its mission" injury. 285 F.3d at 905.

The Ninth Circuit has reaffirmed that frustration of purpose and diversion of resources injuries are sufficient to confer organizational standing to challenge immigration policies. *East Bay Sanctuary Covenant v. Biden* ("*EBSC I*"), 993 F.3d 640, 663-64 (9th Cir. 2021); *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962 974 -75 (9th Cir. 2020)); *see also Nielsen v. Thornell*, 101 F.4th 1164, 1169-71 (9th Cir. 2024), *as amended* (July 8, 2024) (reaffirming standard for organizational standing articulated in *EBSC I*). In *EBSC I*, organizations that assisted migrants in seeking asylum challenged a presidential proclamation and interim final rule that restricted asylum eligibility for noncitizens who crossed into the United States between designated ports of entry. 993 F.3d at 658. The rule and proclamation together rendered such noncitizens ineligible for asylum, which required the organizations to make programmatic changes and shift resources to pursue their shared mission of "assisting migrants seeking asylum." *Id.* at 663. Some organizations diverted resources to enable staff to travel to the border to assist noncitizens subject to the new rule during their initial fear screenings rather than representing noncitizens in removal proceedings in the organization's office in northern California. *Id.* AOL itself was a plaintiff in that case, and the Ninth Circuit recognized that AOL shifted its resources away from providing legal services and toward addressing the nonlegal needs of unaccompanied minors who planned to apply for asylum but could not do so as a result of the change in law. *Id.* The Ninth Circuit explained that organizations asserting frustration or diversion injuries must establish that the defendants' conduct has "perceptibly impaired their ability to perform the services they were formed to provide." 993 F.3d at 663 (citations omitted). Indeed, the court explained that organizations need not establish "some

threshold magnitude of their injuries; one less client that they may have had but-for the Rule's issuance is enough." 993 F.3d at 664. The types of injuries suffered by AOL and other plaintiffs in *EBSC I* easily met that threshold. 993 F.3d at 664.[2]

At the same time, Ninth Circuit precedent has always prohibited organizations from "manufacturing" standing to challenge government policies. *EBSC I*, 993 F.3d at 663 (citing *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). "[I]ncurring litigation costs or simply choosing to spend money fixing a problem that would not affect the organization at all" is insufficient to establish standing. *La Asociacion*, 624 F.3d at 1088 (holding that organization lacked standing when it "failed to assert any factual allegations in its complaint that it was forced to divert resources . . . because of the defendants' actions"). Thus, organizational plaintiffs must sufficiently allege that they "would have suffered some other injury had they not diverted resources to counteracting the problem." *EBSC I*, 993 F.3d at 640.

**B.     *Alliance for Hippocratic Medicine* reaffirmed *Havens* and its progeny.**

*Alliance* reaffirmed *Havens* and the requirement that "issue-advocacy" organizations must incur more than advocacy-related costs to establish standing. 602 U.S. at 393-96. *Alliance* involved a challenge by pro-life doctors and associations to the Food and Drug Administration's (FDA) approval of mifepristone. As relevant here, the organizations asserted standing based on costs they had incurred to advocate to the FDA against mifepristone, including conducting studies on mifepristone's risks,

---

[2] The Ninth Circuit has long considered organizations that support noncitizens to have standing to challenge executive actions that make it more difficult to obtain immigration relief. *See El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991) (holding that an organization had standing to challenge an EOIR policy because "[t]he allegation that the EOIR's policy frustrates these goals [of helping refugees obtain asylum and avoid deportation] and requires the organization to expend resources in representing clients they otherwise would spend in other ways is enough to establish standing.").

1  "drafting citizen petitions to FDA," and undertaking "public advocacy and public
2  education." *Id.* at 394. The Supreme Court rejected an expansive reading of *Havens*
3  that would have provided standing to any organization that "diverts its resources in
4  response to a defendant's actions," regardless of the effect on its mission. *Id.* at 395.
5  Instead, the Supreme Court explained that the key reason the housing organization in
6  *Havens* had standing to sue for racial discrimination was that the organization
7  "operated a housing counseling service," and the defendant's racial discrimination
8  "perceptibly impaired [the organization's] ability to provide counseling and referral
9  services." *Id.* In other words, the false information provided in *Havens* made it more
10 difficult for the organization in *Havens* to help their clients find housing.

11 In contrast, the organizational plaintiffs in *Alliance* did not establish a mission
12 other than advocacy against mifepristone. *Id.* at 385, 395. In any case, advocacy alone
13 is not enough to establish Article III standing, and never has been. As the Supreme
14 Court explained, "an organization that has not suffered a concrete injury caused by a
15 defendant's action cannot spend its way into standing simply by expending money
16 to gather information and advocate against the defendant's action." *Id*. at 394.[3]

17 Unlike the advocacy-only organizations in *Alliance*, both AOL and HBA have
18 missions of assisting noncitizens in navigating the U.S. immigration process and
19 adjusting to life in the United States. Compl. ¶¶145 (AOL's "core mission" is
20 "assisting migrants in seeking relief in the United States"); 148 (HBA's "primary
21 mission is to support recently arrived Black immigrants in adjusting to life in the
22 United States"). Their core programs include providing legal and counseling services
23 to noncitizens, including representation of noncitizens in immigration proceedings in

---

[3] Defendants' suggestion that *Alliance* somehow undercuts existing Ninth Circuit precedent also ignores the high bar for implicitly overruling existing circuit precedent. This Court and subsequent panels of the Ninth Circuit must apply that precedent unless the case is "clearly irreconcilable" with subsequent higher authority. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Alliance* reaffirmed *Havens*, and Defendants do not even suggest that the Ninth Circuit's precedents are irreconcilable (which they are not).

the United States. *Id*. ¶¶10-11; 141 (AOL provides "direct services to people seeking asylum in the United States"); 148 (HBA provides "legal services for individuals in immigration proceedings"). But, as a result of the CBP One Turnback Policy, AOL and HBA have had to divert resources away from their core programs (including direct legal services) and towards support for noncitizens trapped in Mexico due to their inability to obtain a CBP One appointment. *E.g.*, *id*. ¶¶142-43 (AOL assisted migrants with the CBP One app, "advocat[ed] for those who want to present at a POE without a CBP One appointment," produced "know your rights" materials to educate noncitizens about CBP One), 149 (HBA diverted resources to "finding housing, medical assistance, and other social services"). Such specific allegations regarding impairment of core organizational activities were not presented in *Alliance*.

Defendants argue that under *Alliance*, certain allegations regarding advocacy and engagement with stakeholders, without more, cannot establish standing based on diversion of resources. ECF No. 83 at 2; *see* Compl. ¶¶ 142, 144 (referring to "stakeholder meetings" and advocating to DHS). But Defendants define AOL and HBA's missions too generally, while ignoring myriad ways in which Defendants' CBP One Turnback Policy has thwarted their missions and impaired their most fundamental work. This Court should reject Defendants' half-baked standing arguments.

### C. *Murthy* is irrelevant because Plaintiffs here directly challenge the actions of Defendants.

Defendants also vaguely assert that *Murthy* has some bearing on this case and that Plaintiffs have not shown that their injuries are traceable to Defendants' conduct. ECF No. 83 at 2-3. But this case is nothing like *Murthy*. Fundamentally, Plaintiffs here allege harm from Defendants' actions, while the plaintiffs in *Murthy* alleged harm from the actions of an independent third party.

*Murthy* involved a suit by individuals and states against various executive branch officials who allegedly pressured social media platforms to suppress protected

speech in violation of the First Amendment. 144 S.Ct. at 1986. Plaintiffs made various posts on social media about the 2020 election or COVID-19 that the social media platforms either removed or demoted. *Id.* at 1984. But rather than suing the platforms themselves, the plaintiffs sought to enjoin the executive branch officials from taking any action to "demand, urge, encourage, pressure, or otherwise induce" the platforms to "censor, suppress, remove, de-platform" or take other adverse action against the plaintiffs. *Id.*

The Supreme Court explained the obvious challenge faced by plaintiffs suing someone other than the person or entity who actually harmed them. *Id.* at 1986. "[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Id.* (citation omitted). Thus, plaintiffs suing executive branch officials have to establish that some executive official conduct *caused* the censorship activities or would be likely to do so in the future. *Id.* at 1987. But the evidence in that record indicated that the platforms engaged in content moderation long *before* executive officials became involved and "had independent incentives to moderate content and often exercised their own judgment." *Id.* at 1988. Based on the record, the Court concluded that no plaintiff had provided sufficient evidence at the preliminary injunction stage of the causal connection between executive conduct and the platforms' actions. *Id.* at 1996-97.

*Murthy's* standing analysis is irrelevant because Plaintiffs here challenge a policy created and implemented by the executive officials who are named Defendants. Plaintiffs allege that as a result of the CBP One Turnback Policy, migrants who should have been inspected, processed, and permitted to seek asylum in the United States have instead been forced to remain indefinitely in dangerous Mexican border towns. Compl. ¶¶141-151. There, such migrants face threats of refoulement, pursuit by persecutors, physical and sexual violence, kidnapping, and death. Compl. ¶¶131, 133-40 (describing harm to Individual Plaintiffs); 116-30 (describing harm asylum seekers face in Mexico). It is that policy that has caused Plaintiffs AOL and HBA to

divert resources from their core programs and frustrated their missions. *Id.* ¶¶145 (requiring AOL to "hire additional staff in its Tijuana office and raise funds for emergency humanitarian aid for affected migrants"); 149 (similar for HBA). Without that policy, migrants would be entitled to inspection and processing under the Immigration and Nationality Act. *See Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 3931890, at *11 (S.D. Cal. 2021).

### D. Plaintiffs also include individuals and a proposed class of noncitizens who have been directly harmed by Defendants' conduct.

In any event, this Court need not address Defendants' last-minute, erroneous standing arguments because Plaintiffs include individuals who seek to represent a class of noncitizens turned back from the border under the CBP One Turnback Policy. Compl. ¶¶152-57. In suits seeking declaratory and injunctive relief, "only one plaintiff need demonstrate standing to satisfy Article III." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 &n.32 (9th Cir. 2022) (en banc). Defendants do not have any serious challenge to Individual Plaintiffs' standing, and this new authority is a mere delay or distraction.

## CONCLUSION

For the foregoing reasons, *Alliance* and *Murthy* do not affect AOL and HBA's standing, and this Court should deny Defendants' pending Motion to Dismiss.

Dated: July 22, 2024          Respectfully submitted,

MAYER BROWN LLP
    Matthew H. Marmolejo
    Michelle N. Webster
    Matthew E. Fenn

VINSON & ELKINS LLP
    Stephen M. Medlock
    Evan Miller
    Nataly Farag
    Alex Rant
    Rami Abdallah E. Rashmawi
    Ethan Nutter*

CENTER FOR GENDER AND REFUGEE STUDIES
    Melissa Crow
    Neela Chakravartula
    Dulce Rodas
    Robert Pauw

CENTER FOR CONSTITUTIONAL RIGHTS
    Baher Azmy*
    Angelo Guisado*

AMERICAN IMMIGRATION COUNCIL
    Suchita Mathur

By: /s/ *Stephen M. Medlock*
  Stephen M. Medlock

*Attorneys for Plaintiffs*
* Pro Hac Vice motion forthcoming.

## **CERTIFICATE OF SERVICE**

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

DATED: July 22, 2024

                                                Respectfully submitted,

                                                *s/ Stephen M. Medlock*
                                                Stephen M. Medlock

                                                *Attorney for Plaintiffs*